ERIN HOLBROOK, Chief Counsel
G. MICHAEL HARRINGTON, Deputy Chief Counsel
SAMUEL C. LAW, Assistant Chief Counsel
STEPHEN A. SILVER, Deputy Attorney (SBN 214505)
Caltrans Legal Division – Bay Area Office
111 Grand Avenue, Suite 11-100, Oakland, CA 94612
Mail: P.O. Box 24325, Oakland, CA 94623-1325
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

Attorneys for Defendants STATE OF CALIFORNIA,
acting by and through the DEPARTMENT OF TRANSPORTATION ("CALTRANS"); DINA EL-TAWANSY; and TOKS OMISHAKIN

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKSON BLAIN; JOHN JANOSKO; KELLIE CASTILLO; KELLY THOMPSON; NICOLAS GONZALEZ; ESTEBAN GONZALEZ; SHAWN WIDOMEN; PETER A. DODER; ALEX HEINE; MAYANA SPARKS; ADAM DAVIS; RICHARD MILTON; BENJAMIN MURAWSKI; RAMONA; GREG WIDOWMEN; JAMES FOREMAN; KEN SHEN; PIERRE DANIELS; PHIL JENKINS; DAVID BAHAR; KATHERINE CAVENER; JEREMY OLIVIERA; ABBY DILL; JESSICA HIGGIN; MATT SANATIVSAR; DUSTIN DENEGA; MATTHEW BUSTER; WILL SCHWERMA; DOUGLAS SOLLARS; JAY PRASAD,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF TRANSPORTATION; DINA EL-TAWANSY; CITY OF OAKLAND; ED REISKIN; BURLINGTON NORTHERN SANTA FE RAILROAD; SUSAN MURANISHI; GOVERNOR GAVIN NEWSOM; COUNTY OF ALAMEDA; TOKS OMISHAKIN; KATHERYN FARMER; LIBBY SCHAAF,<br><br>Defendants. | Case No.: 3:22-cv-04178-WHO<br><br>**DEFENDANTS CALIFORNIA DEPARTMENT OF TRANSPORTATION, DINA EL-TAWANSY AND TOKS OMISHAKIN'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Date of Hearing: July 22, 2022<br>Time: 10:00 a.m.<br>Judge: Hon. William H. Orrick |

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT ....................................................... 1

II. STATEMENT OF FACTS ................................................................................................... 3

    A. The Property ............................................................................................................ 3

    B. The Project .............................................................................................................. 4

    C. Fires at the Wood Street Encampments ................................................................... 4

    D. Hazards to Public .................................................................................................... 5

    E. Hazards From EBMUD Facility ............................................................................. 6

    F. Outreach Efforts ...................................................................................................... 7

III. PLAINTIFFS DO NOT SATISFY THE REQUIREMENTS FOR A TEMPORARY RESTRAINING ORDER ...................................................................................................... 8

    A. Temporary Restraining Order Requirements ......................................................... 8

    B. Plaintiffs Fail to Demonstrate a Likelihood They Will Succeed on the Merits ........... 9

        1. Previous TROs have no bearing on this matter ........................................... 9

        2. Plaintiffs' Eighth Amendment Claim Fails (Claim 5) ............................... 10

        3. Plaintiffs' Procedural Due Process Claim Fails ........................................ 11

        4. Plaintiffs' State-Created Danger Doctrine Claims Fail (Claims 1 and 2) .... 11

        5. Plaintiffs' First Amendment Claim Fails ................................................... 13

        6. Plaintiffs' ADA Claim Fails (Claim 4) ...................................................... 14

    C. A Balance of Hardships Tips Sharply in Caltrans' Favor and the Public Interest Favors Denying the Motion ................................................................................. 14

    D. Plaintiffs Fail to Demonstrate Immediate Threatened Harm .................................. 15

IV. CONCLUSION .................................................................................................................. 15

*CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION*
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

i

**DEFENDANTS CALIFORNIA DEPARTMENT OF TRANSPORTATION, DINA EL-TAWANSY AND TOKS OMISHAKIN'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

# TABLE OF AUTHORITIES

Cases                                                                                                                Page(s)

*adidas Am., Inc. v. Skechers USA, Inc.*,
  890 F.3d 747 (9th Cir. 2018) .............................................................................................. 17

*Aitken v. City of Aberdeen*,
  393 F. Supp. 3d 1075 (W.D. Wash. 2019) ........................................................................ 13

*Alliance for Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ..................................................................................... 11, 16

*Alliance for Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ............................................................................................ 4

*Am. Trucking Ass'ns v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009) .......................................................................................... 11

*Arc of California v. Douglas*,
  757 F.3d 975 (9th Cir. 2014) ............................................................................................ 12

*Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
  729 F.3d 937 (9th Cir. 2013) ............................................................................................ 11

*Burnett v. San Francisco Police Dep't*,
  36 Cal.App.4th 1177 .......................................................................................................... 16

*Cobine v. City of Eureka*,
  250 F. Supp. 3d 423 (N.D. Cal. 2017) .............................................................................. 14

*Gish v. Newsom*,
  2020 WL 1979970 (April 23, 2020) .................................................................................. 10

*Givens v. Newsom*,
  459 F.Supp.3d 1302 (2020) ..................................................................................... 4, 10, 11

*Harry A. v. Duncan*,
  351 F. Supp. 2d 1060 (D. Mont. 2005) ............................................................................. 15

*Hernandez v. City of San Jose*,
  897 F.3d 1125 (9th Cir. 2018) .......................................................................................... 14

*L.W. v. Grubbs*,
  92 F.3d 894 (9th Cir. 1996) .............................................................................................. 14

*Lockheed Missile & Space Co. v. Hughes Aircraft Co.*,
  887 F. Supp. 1320 (N.D. Cal. 1995) ................................................................................. 11

*Martin v. City of Boise*,
  920 F.3d 584 (9th Cir. 2019) ............................................................................................ 13

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) ..................................................................................................... 11, 12

*Midgett v. Tri-County Metro. Transp. Dist. of Oregon*,
  254 F.3d 846 (9th Cir. 2001) ............................................................................................ 17

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

*Monell v. Dep't of Social Services*,
  436 U.S. 658 (1978) .................................................................................................................. 4

*Munaf v. Geren*,
  553 U.S. 674 (2008) ................................................................................................................ 10

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................................................................ 12

*Pottinger v. City of Miami*,
  810 F. Supp. 1551 (S.D. Fla. 1992) ........................................................................................ 13

*Reed v. City of Emeryville*,
  2021 WL 1817103 ............................................................................................................ 12, 15

*Sanchez v. California Dep't of*,
  2020 WL 9456677 (Cal. Super. 2020) ......................................................................... 5, 10, 13

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
  709 F.3d 1281 (9th Cir. 2013) ................................................................................................ 12

*Shipp v. Schaaf*,
  379 F. Supp. 3d 1033 (N.D. Cal. 2019) .................................................................................. 13

*Short v. Brown*,
  893 F.3d 671 (9th Cir. 2018) .................................................................................................. 12

*Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush & Co., Inc.*,
  240 F.3d 832 (9th Cir. 2001) .................................................................................................. 11

*Sullivan v. City of Berkeley*,
  2017 WL 4922614 (N.D. Cal. Oct. 31, 2017) ........................................................................ 13

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ................................................................................................................ 17

*Thompson v. Davis*,
  295 F.3d 890 (9th Cir. 2002) .................................................................................................. 16

*Where Do We Go Berkeley v. California Dep't of Transp.*,
  32 F.4th 852 (9th Cir. 2022) ............................................................................................*Passim*

*Winter v. Natural Res. Def. Council*,
  555 U.S. 7 (2008) ........................................................................................................ 4, 11, 16

Statutes

42 U.S.C. § 1983 .................................................................................................................... 4, 14

42 U.S.C. § 1985 ......................................................................................................................... 4

Cal. Sts. & Hy. Code §§ 90, 91 (West) ....................................................................................... 6

iii

**DEFENDANTS CALIFORNIA DEPARTMENT OF TRANSPORTATION, DINA EL-TAWANSY AND TOKS OMISHAKIN'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants the State of California, acting by and through the Department of Transportation ("California Department of Transportation" or "Caltrans"), Dina El-Tawansy, and Toks Omishakin (collectively, "Caltrans Defendants") ask this Court to deny plaintiffs' motion for a temporary restraining order.

Caltrans is in the process of clearing a sprawling encampment in Oakland colloquially known as Wood Street. This is being done in response to immediate public safety concerns, specifically a recent rash of fires that have killed one person, endangered the lives of the approximately 200 individuals occupying the subject location, and threaten the integrity of the highway structure itself, and threaten a nearby local utility facility that, if a fire reached it, could cause catastrophic damage due to materials maintained on site and disrupt service to hundreds of thousands of nearby customers. To facilitate this critically important safety measure, Caltrans is removing people experiencing homelessness from this location.

Plaintiffs allege that Caltrans' partial removal of the sprawling encampment: (1) constitutes a state-created danger in violation of the 14th Amendment's Due Process Guarantee; (2) constitutes a state-created danger in violation of the California Constitution's Article I, Section 7 Due Process Guarantee; (3) constitutes an unlawful seizure of property in violation of the Fourth Amendment; (4) violates Title II of the Americans with Disabilities Act of 1990; (5) constitutes an infliction of cruel and unusual punishment in violation of the Eighth Amendment; (6) violates the right to freedom to assemble under the First Amendment; (7) constitutes a conspiracy to deprive plaintiffs of their civil rights in violation of 42 U.S.C. § 1985; and (8) provides a basis for a Monell Claim (*see, Monell v. Dep't of Social Services,* 436 U.S. 658 (1978)) under 42 U.S.C. § 1983. (Complaint at 7-14.)[1]

Plaintiffs cannot satisfy the legal elements for a temporary restraining order ("TRO"). To obtain one, they would have to satisfy the same requirements as those that apply for obtaining a preliminary injunction. *Givens v. Newsom,* 459 F.Supp.3d 1302, 1309 (2020). That is, plaintiffs must show (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of the

---

[1] The seventh and eighth causes of action (conspiracy and Monell) are derivative of the preceding claims and therefore not separately addressed in this preliminary opposition to the requested TRO.

**DEFENDANTS CALIFORNIA DEPARTMENT OF TRANSPORTATION, DINA EL-TAWANSY AND TOKS OMISHAKIN'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

1  requested relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the
2  public interest. *Winter v. Natural Res. Def. Council,* 555 U.S. 7, 20 (2008). Alternatively, courts may
3  issue TROs where it finds that there are "serious questions going to the merits" and a "balance of
4  hardships that tips sharply towards the plaintiff," along with the two remaining *Winter* factors. *Alliance*
5  *for Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011).

6        Here, plaintiffs fail to assert facts sufficient to show either a likelihood of success on the merits
7  or even serious questions going to the merits, as detailed below in defendants' argument.

8        Moreover, plaintiffs cannot show that a balancing of hardships tips in their favor (as required
9  under the *Winter* test) or tips *sharply* in their favor (as required under the *Cottrell* test). The fires at the
10 Wood Street encampments, including one that resulted in the death of an encamped individual, give
11 Caltrans a compelling interest in removing the encampments from this location. Given the condition of
12 the encampments, the presence of flammable materials, and close proximity of encamped individuals
13 to one another and to the highway structure, the Plaintiffs' inconvenience in having to relocate
14 themselves and their belongings does not outweigh Caltrans' interest in preventing potentially deadly
15 fires at a crowded encampment and protecting the safety of the traveling public that uses the highway
16 structure. Indeed, it is noted that the July 11, 2022, fire caused damage to the elevated highway
17 structure. Moreover, there is a very serious concern about an East Bay Municipal Utility District
18 ("EBMUD") Main Wastewater Treatment Plant located just 215 feet from the site of the July 11, 2022
19 fire at the encampment. Baskerville Decl. ¶ 18. EBMUD's MWWTP has two high purity oxygen
20 (HPO) plants. A fire that ignited an oxygen plant could create a catastrophic conflagration, and even if
21 the treatment plant were merely disabled due to a fire, it would create an environmental hazard.
22 Declaration of Cheryl Chambers in Support of Defendants Caltrans, Dina El-Tawansy, and Toks
23 Omishakin's Opposition to Plaintiffs' Motion for Temporary Restraining Order ("Chambers Decl.") ¶¶
24 18-19 and Exhibit B. Taking all of these concerns in concert, it is essential that Caltrans be allowed to
25 clear and clean the encampment without delay.

26       The same is true of the public interest, which, for the same reasons, clearly favors removing the
27 encampment.

28       Furthermore, plaintiffs cannot show irreparable harm. They are occupying Caltrans property, to

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

2

which they have no ownership interest. As for their personal property, pursuant to the terms of the settlement agreement in the class-action matter *Kimberlee Sanchez, et al. v. California Department of Transportation*, Alameda County Superior Court Case No. RG16842117, as amended by *Sanchez v. California Dep't of Trans.,* 2020 WL 9456677 (Cal. Super. 2020) ("*Sanchez*"), Caltrans is required to store personal property removed from the subject encampment, *see* Second Declaration of Stephen A. Silver in Support of Defendants' Opposition to Plaintiffs' Motion for Temporary Restraining Order and Request for Judicial Notice ("Second Silver Decl."), ¶ 6 and Exhibit 1 at 76:24-27, and even if some of plaintiffs' property is damaged or if property deemed by plaintiffs to have value is destroyed as a result of the encampment being removed, Plaintiffs can be compensated for their loss. What would be truly irreparable would be the lives lost in the event of a mass casualty fire or environmental catastrophe or if there is severe damage to the highway structure.

In sum, plaintiffs cannot satisfy the requirements for a TRO to be issued, and there is good reason for this Court to stay this action in federal court in deference to the pending state court action.

## II.    STATEMENT OF FACTS

### A. The Property

The Wood Street encampments encompass a sprawling area both in and adjacent to Caltrans' right-of-way, including portions that extend along and underneath Interstate 880. They begin near the intersection of Frontage Road and 20th Street and end near the intersection of Wood Street and 32nd Street. Declaration of Andrew Baskerville in Support of Caltrans' Opposition to Motion for Temporary Restraining Order ("Baskerville Decl.") ¶ 5. Aerial photographs overlayed with the planned project phases for cleaning and clearing the Wood Street encampments are attached as Exhibit A to the declaration of Andrew Baskerville.

At all relevant times, Caltrans has owned the subject property, which is part of a heavily traveled state highway. Under California statutory authority, Caltrans "shall" have full possession and control of its highways and is charged with the duty to improve and maintain its highways. Cal. Sts. & Hy. Code §§ 90, 91 (West). *Where Do We Go Berkeley v. California Dep't of Transp.,* 32 F.4th 852, 855 (9th Cir. 2022).

3

### B. The Project

The subject cleaning and removal of encampments from the subject area is part of an approximately $3,680,000 project for the cleaning and fencing of portions of the Wood Street encampments along and underneath Interstate 880 in the County of Alameda. Baskerville Decl. ¶¶ 4-5. Attached as Exhibit A to the Declaration of Andrew Baskerville are aerial photographs overlayed with the planned project phases for cleaning and clearing the Wood Street encampments. The third and final phase of Caltrans' removal and cleaning of encampments from this area is the subject of plaintiffs' Complaint.

### C. Fires at the Wood Street Encampments

The Wood Street encampments have been the site of numerous fires over the past several years. There were 195 fires on Caltrans property at the Wood Street encampments during the two-year period from March 2020 through March 2022, according to official records provided by the Oakland Fire Department. Declaration of Stephen A. Silver in Support of Defendants' Opposition to Plaintiffs' Motion for Temporary Restraining Order ("Silver Decl."), ¶¶ 6-7 and Exh. 1-2. *See also,* Baskerville Decl., ¶¶ 8-9 and Exh. B-G. A fire there left an encamped individual dead on April 5, 2022, and another on March 10, 2022 killed two dogs and burned three RVs. Silver Decl. ¶¶ 9, 11 and Exh. 4, 6.

Most recently, there was a massive fire on July 11, 2022, that burned several RVs. (https://www.cbsnews.com/sanfrancisco/video/raw-video-scene-of-homeless-encampment-fire-near-macarthur-maze-in-oakland/#x) This fire was located in a homeless encampment on Burlington Northern Santa Fe (BNSF) railroad property in the northern portion of the Wood Street encampment, about 500 feet outside Caltrans property but within Caltrans' aerial easement for its highway structure. The fire ignited a wood trestle directly underneath the EB I-80 to SB I-880 connector structure. Although the fire was located on BNSF property, the I-880 structure was damaged by the intensity and proximity of the fuel load from the adjacent homeless encampments and wood trestle. The fire resulted in the closure of portions of the heavily traveled MacArthur Maze (I-80, I-880 & I-580 interchange

near the Bay Bridge approach) for over 4 hours, and damaged the concrete column of the EB I-80 to SB I-880 connector consisting of a roughly 30-foot-high by 6-foot-wide spall of the surface concrete on the bridge column. Baskerville Decl., ¶ 10. Damage to the bridge columns can be seen in photographs included in Exhibit H to the Baskerville Declaration. *See also,* Silver Decl. ¶¶ 12-14 and Exh. 7-9.[2]

### D. Hazards to Public

The Wood Street encampments create a number of hazards to the traveling public, Caltrans employees, and the public at large. The encampments generate significant amounts of trash and create large flammable fuel loads underneath and adjacent to State Highway System and local road structures. These encampments also generate trash, debris, hazardous waste, and biohazardous waste materials that generate storm water run-off that enters the Bay and other protected water ways. The encampments further prevent Caltrans engineers from accessing and inspecting the bridge and structural elements of Interstate 880. Baskerville Decl. ¶ 6.

In addition to the normal risks of injury or death inherent in any fire, a fire underneath or adjacent to a bridge structure has the additional risk of damaging, weakening, or collapsing the structure. Reinforced concrete can be damaged causing the protective outer layers to crack and spall and thus exposing the reinforcing metal rebar. The metal rebar itself can be damaged by heat and differentials in coefficients of thermal expansion can likewise create stresses and damage the structures. Fires have damaged Caltrans bridge structures, requiring significant repair or reconstruction of portions of the bridge. Bridge structures are costly to construct, and a single span can run into the millions or tens of millions of dollars to construct. Baskerville Decl. ¶ 11.

---

[2] According to a July 11, 2022 *Los Angeles Times* article titled "Massive fire burns cars and RVs at homeless encampment under Oakland freeway," Oakland Fire Chief Reginald Freeman was quoted as saying: "We have a little bit of everything burning. … We have cars, we have RVs, we have a ton of combustible materials, hazardous materials. We've had several explosions since we've been here working on this incident. Which is obviously a concern and a threat to the safety of the firefighters mitigating this incident." (https://www.latimes.com/california/story/2022-07-11/massive-fire-flares-up-at-homeless-encampment-under-oakland-freeway) According to a July 11, 2022 KCBS radio report titled "Explosions reported in Oakland homeless encampment fire," Freeman said he saw "[e]verything from propane to other pressurized cylinders including a settling cylinder," and expressed concern that some of his firefighters don't have the opportunity to wear a mask, "so they are inhaling a lot of hazardous smokes and fumes." (https://www.audacy.com/kcbsradio/news/local/explosions-reported-in-oakland-homeless-encampment-fire) It was reported that the fire "quickly spread to RVs, tiny homes and an abandoned train trestle." (https://www.audacy.com/kcbsradio/news/local/explosions-reported-in-oakland-homeless-encampment-fire) Silver Decl. ¶¶ 12-14 and Exh. 7-9.

*CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION*
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

**DEFENDANTS CALIFORNIA DEPARTMENT OF TRANSPORTATION, DINA EL-TAWANSY AND TOKS OMISHAKIN'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

5

1    Specifically, the fire on July 11, 2022, resulted in the closure of portions of the MacArthur
2 Maze (I-80, I-880 & I-580 interchange near the Bay Bridge approach) for over 4 hours, and resulted in
3 damage to the concrete column of the EB I-80 to SB I-880 connector consisting of a roughly 30-foot-
4 high by 6-foot-wide spall of the surface concrete on the bridge column. Baskerville Decl. ¶ 11. Damage
5 to the bridge columns can be seen in photographs included in Exhibit H to Baskerville's Declaration.
6 *See also,* Silver Decl. ¶ 8 and Exh. 3.

7    The Wood Street encampment creates additional fire risks as a result of persons opening
8 Caltrans electrical boxes and tapping the electricity. Baskerville Decl. ¶ 16 and Exhibits to
9 Baskerville's declaration depict an electrical box which has had the protective fuses removed and metal
10 objects wedged in place of the fuses, and one of the buckets of hypodermic needles removed from the
11 Wood Street encampment. Baskerville Decl. Exh. N-O.

12  **E. Hazards From EBMUD Facility**

13   Perhaps the most compelling concern, however, is that EBMUD has a wastewater treatment
14 plant with facilities that are within 215 feet west of the encampment fire that occurred on July 11, 2022.
15 Baskerville Decl. ¶ 18; Chambers Decl. ¶¶ 18-19 and Exhibit B.

16   EBMUD's Main Wastewater Treatment Plant ("MWWTP") treats approximately 55 million
17 gallons per day (mgd) of wastewater sewage during dry weather, and much more during wet weather.
18 The treated water is discharged directly to the San Francisco Bay. EBMUD's MWWTP has two high
19 purity oxygen (HPO) plants, each capable of producing 90 tons of HPO per day. The HPO produced by
20 the oxygen plants is essential to EBMUD's wastewater treatment process, and without it, EBMUD
21 would be forced to discharge many millions of gallons per day of mostly untreated sewage into San
22 Francisco Bay. Chambers Decl. Exh. B.

23   The oxygen plants are located close to the encampment where fires have occurred. Fires are
24 much more violent and dangerous when in contact with pure oxygen, and most materials will burn in
25 this environment, whereas they may not if exposed to a fire in air. The July 11, 2022 fire was blown
26 away from the HPO plants by the prevailing wind, but if the wind direction had turned toward
27 EBMUD's MWWTP, the risk to the HPO plants would have been high. A fire the size of the
28 encampment fires could cause severe damage to EBMUD's HPO plants and could potentially put them

**DEFENDANTS CALIFORNIA DEPARTMENT OF TRANSPORTATION, DINA EL-TAWANSY AND TOKS OMISHAKIN'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

out of service for many months, which would likely result in significant harm to the San Francisco Bay. Chambers Decl. Exh. B.

EBMUD's MWWTP's main electrical substation is also located very close to where the encampment fires have taken place. A large fire at this substation could also result in substantial consequences. Without this substation, the MWWTP's influent pumps could not operate and move sewage into the MWWTP. Wastewater would back up into the sewer system, causing uncontrolled releases of untreated sewage into the San Francisco Bay and throughout the EBMUD service area. Chambers Decl. Exh. B.

There is also the risk of injury or possibly death to EBMUD's employees or others in the area breathing toxic air caused by the resulting smoke from burning various materials in the encampment area. There have been propane tanks in the encampment area exploding in these fires, bullets and golf balls shot from the encampment to EBMUD's MWWTP. The safety risk from the encampment being as close as it is to EBMUD's MWWTP and to our employees who work there is significant. Chambers Decl. Exh. B.

**F.  Outreach Efforts**

Over the last two and a half years, Caltrans has worked diligently with its local partners to coordinate outreach efforts at Wood Street encampments on Caltrans's right of way.[3]

Following the July 11, 2022 fire, on or about July 15, 2022, Caltrans External Affairs notified various advocate groups of Caltrans intent to clear the area in Phase 2 and Phase 3 at Wood Street. The

---

[3] County of Alameda Health Care Services Agency ("HCSA") has taken the primary role in providing outreach and alternate housing options for individuals experiencing homelessness on Caltrans' right of way at the Wood Street encampments on Caltrans's right way. HCSA's outreach efforts have been primarily performed by its contractor LifeLong Medical Care. The City of Oakland has also provided housing and outreach services for individuals experiencing homelessness at the Wood Street encampments, including through its contractor Operation Dignity. Caltrans has been in direct contact with Kerry Abbott Director, HCSA's Director of Homeless Care and Coordination, and LaTonda Simmons, Assistant City Administrator for the City, regarding outreach and alternate housing options for people experiencing at Wood Street encampments available through HCSA and the City of Oakland. Chambers Decl. ¶¶ 5-10.
During conversations last week (July 12-15) with HCSA and the City, Caltrans' partners discussed making available several housing options to individuals currently living at the Wood Street encampments, including referrals to approximately 22 shelter sites in Oakland. However, availability for congregate shelters is fluid as some shelters were closed to intake due to COVID. The City and HCSA are also evaluating Section 8 vouchers and possible emergency housing vouchers through City of Oakland Housing Authority. Chambers Decl. ¶¶ 11-12. Based on information and belief, HCSA is evaluating extending the lease for the Radisson Hotel, which is set to expire, to serve as an absorption point for people experiencing homelessness at Wood Street encampments. Chambers Decl. ¶ 14.

7

**DEFENDANTS CALIFORNIA DEPARTMENT OF TRANSPORTATION, DINA EL-TAWANSY AND TOKS OMISHAKIN'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

clearing was planned in three stages, in an effort to provide as much notice as possible to those affected. Stage 1 (northern portion of Phase 3) was posted on Friday, July 15, 2022, with a clearing date of Wednesday, July 20, 2022. Stage 2 (southern portion of Phase 3) was posted on Friday, July 15, 2022, with a clearing date of Friday, July 22, 2022. Stage 3 (central portion of Phase 2) was posted on Friday, July 15, 2022, with a clearing date of Monday, August 1, 2022. Baskerville Decl. ¶ 12. The form of the posted notice was consistent with the terms of the settlement agreement in the class-action matter *Kimberlee Sanchez, et al. v. California Department of Transportation*, Alameda County Superior Court Case No. RG16842117, as amended by *Sanchez v. California Dep't of Trans.,* 2020 WL 9456677 (Cal. Super. 2020). *Cf*. Second Silver Decl. Exh. 1 at 76:11-78:16.

On July 19, 2022, Caltrans employees posted a separate notice on all structures with a removal date of July 25, 2022. Baskerville Decl. ¶ 13.

Plaintiffs filed suit and moved this Court for a temporary restraining order.

### III.   PLAINTIFFS DO NOT SATISFY THE REQUIREMENTS FOR A TEMPORARY RESTRAINING ORDER

#### A.   Temporary Restraining Order Requirements

A temporary restraining order, much like a preliminary injunction, is an "extraordinary and drastic remedy." *Munaf v. Geren,* 553 U.S. 674, 690 (2008). "'The propriety of a temporary restraining order, in particular, hinges on a significant threat of irreparable injury [ ] that must be imminent in nature.'" *Givens v. Newsom,* 459 F.Supp.3d 1302, 1310 (2020) (quoting *Gish v. Newsom,* 2020 WL 1979970, at *3 (April 23, 2020)) (alteration in original).

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Givens,* 459 F.Supp.3d at 1309 (citing *Lockheed Missile & Space Co. v. Hughes Aircraft Co.,* 887 F. Supp. 1320, 1323 (N.D. Cal. 1995); *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush & Co., Inc.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001)). The moving party "carries the burden of persuasion" "*by a clear showing*." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (italics in original). Plaintiffs seeking these forms of injunctive relief must demonstrate: (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *Am. Trucking Ass'ns v. City of Los Angeles,* 559 F.3d 1046, 1052 (9th Cir. 2009) (citing

8

**DEFENDANTS CALIFORNIA DEPARTMENT OF TRANSPORTATION, DINA EL-TAWANSY AND TOKS OMISHAKIN'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

*Winter v. Natural Res. Def. Council,* 555 U.S. 7, 24-25 (2008)). In the Ninth Circuit, courts may also issue temporary restraining orders when there are "serious questions going to the merits" ***and*** a "balance of hardships that tips ***sharply*** towards the plaintiff" so long as the remaining two *Winter* factors are also present. *Alliance for Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011). A plaintiff "must establish that irreparable harm is *likely*, not just possible." *Cottrell*, 632 F.3d at 1131.

### B. Plaintiffs Fail to Demonstrate a Likelihood They Will Succeed on the Merits

Plaintiffs fail to meet their burden of demonstrating a likelihood of success on any cause of action. "[B]efore exercising its authority to issue an injunction, the district court must analyze the merits. The Supreme Court has explained that plaintiffs seeking a preliminary injunction must establish that they are likely to succeed on the merits. [Citation.]" *Where Do We Go Berkeley,* 32 F.4th at 863. Where a plaintiff fails to demonstrate likelihood of success on the merits, the district court need not "consider the remaining *Winter* elements." *Association des Eleveurs de Canards et d'Oies du Quebec v. Harris,* 729 F.3d 937, 953 (9th Cir. 2013) (internal citations omitted).

In *Cottrell*, the Ninth Circuit held that the "sliding scale" test (also referred to as the "serious questions" test) is still viable after *Winter*. *Cottrell*, 632 F.3d at 1131, 1134-35. This application means, for example, that a "stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *Id*. Thus, "where there are only 'serious questions going to the merits' – that is, less than a 'likelihood of success' on the merits – a preliminary injunction may still issue so long as 'the balance of hardships tips *sharply* in the plaintiff's favor" and there is a likelihood of irreparable injury and the injunction is in the public interest. *Short v. Brown,* 893 F.3d 671, 675 (9th Cir. 2018) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc*., 709 F.3d 1281, 1291 (9th Cir. 2013) (emphasis in original)).

Plaintiffs' motion addresses the issue of whether they are likely to succeed on the merits not by analyzing each of the specific claims pled, but rather, by offering a hodgepodge of allegations with varying degrees of relevancy to the causes of action in the Complaint. None of these allegations are convincing.

### 1. Previous TROs have no bearing on this matter

9

Plaintiffs allege likelihood of success[4] because California Department of Transportation has been restrained by this Court multiple times in the past year in nearly identical circumstances. Motion for Temporary Restraining Order and Preliminary Injunction ("Plaintiffs' Motion") at 3:25-28. Plaintiffs cite three cases – *Blumberg v. Chambers,* 3:22-cv-01834-MMC; *Reed v. City of Emeryville,* 3:21-cv-02781-WHO; and *Roles v. California Dep't of Transp.,* 3:21-cv-04435-EMC – but offer no details elucidating how the circumstances of these cases are "nearly identical" to the matter at bar, nor do they offer case law substantiating the issuance of temporary restraining orders in prior cases as a basis for satisfying the likelihood of success element in a new matter. Moreover, plaintiffs' contentions are inaccurate and omit important context. Notably, in *Blumberg,* the Court never granted Plaintiffs' motion for a TRO against the State – rather, the parties voluntarily agreed to preserve the status quo while negotiations took place. Second Silver Decl. ¶ 10. In *Reed,* the court granted the TRO but denied the preliminary injunction. *Reed v. City of Emeryville,* 2021 WL 1817103. In *Roles,* the court granted a TRO that was subsequently expanded into a preliminary injunction, but the injunction was later reversed on appeal by the Ninth Circuit on numerous grounds including that the district court erred in its balance of equities analysis. *Where Do We Go Berkeley,* 32 F.4th at 863-865.

### 2. *Plaintiffs' Eighth Amendment Claim Fails (Claim 5)*

Plaintiffs contend that Defendants Caltrans and Gov. Newsom are violating *Martin v. City of Boise,* 920 F.3d 584 (9th Cir. 2019), by not offering alternative housing. In *Martin,* the court found that the plaintiffs "face[d] a credible risk of prosecution," *id.* at 610, and that a **municipality** cannot, consistent with the Eighth Amendment, criminalize sleeping outdoors due to homelessness when sleeping space at a shelter was unavailable. *Martin,* 920 F.3d at 618.

As a threshold matter, Plaintiffs fail to explain how Caltrans, which has authority over managing the state highway and is not equipped to provide shelter or housing aid, is analogous to a

---

[4] To the extent Plaintiffs rely on the *Cottrell* sliding scale "serious questions" rule, Plaintiffs' Motion for TRO at 3:9-19, it does not alter the outcome here. "The irreducible minimum [for injunctive relief] ... is that the moving party demonstrate a *fair chance of success* on the merits or questions serious enough to require litigation. No chance of success at all will not suffice.'" *Arc of California v. Douglas*, 757 F.3d 975, 993 (9th Cir. 2014) (emphasis added). "It is not enough that the chance of success on the merits be 'better than negligible.'" *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citations omitted). *See also, Where Do We Go Berkeley,* 32 F.4th at 863; *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997).

10

**DEFENDANTS CALIFORNIA DEPARTMENT OF TRANSPORTATION, DINA EL-TAWANSY AND TOKS OMISHAKIN'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

municipality. Requiring that Caltrans "nevertheless host a homeless encampment on its property would far exceed its statutory authorization." *Sullivan v. City of Berkeley*, No. C 17-06051 WHA, 2017 WL 4922614, at *4 (N.D. Cal. Oct. 31, 2017). Plaintiffs' argument is further defective because they do not point to any California law or ordinance that presents them with a credible risk of citation or arrest. Plaintiffs' brief makes unsubstantiated allegations that "threats of arrests are coming," but there is no factual basis asserted for Plaintiffs' *Martin* violation allegation. Ultimately, "*Martin* does not limit [a public entity's] ability to evict homeless individuals from particular public places," like underneath an interstate freeway. *Aitken v. City of Aberdeen*, 393 F. Supp. 3d 1075, 1082 (W.D. Wash. 2019). "[R]emaining at a particular encampment on public property is not conduct protected by *Martin* ... . This is not a case where 'homeless plaintiffs do not have a single place where they can lawfully be' within the City." *Shipp v. Schaaf*, 379 F. Supp. 3d 1033, 1037 (N.D. Cal. 2019) (quoting *Pottinger v. City of Miami*, 810 F. Supp. 1551, 1565 (S.D. Fla. 1992)).

### 3. *Plaintiffs' Procedural Due Process Claim Fails*

Plaintiffs contend that "Cal Trans [sic] is not going to be storing property." Plaintiffs have not pled a procedural due process claim, which forecloses any entitlement to interim injunctive relief on such a theory. In any event, Plaintiffs' contention is simply false. In fact, Caltrans is bound by the terms of *Sanchez v. California Department of Transportation,* Alameda County Superior Court Case No. RG16842117, to collect, label and store personal property of apparent value that is not a health or safety hazard for 60 days from the date of the cleanup of an encampment. Second Silver Decl. ¶ 6 and Exh. 1 at 76:24-27. Even if some of plaintiffs' property is damaged or if property deemed by plaintiffs to have value is destroyed as a result of the encampment being removed, Plaintiffs can be compensated for their loss; it would not be irreparable.

To the extent this argument is tied to their Fifth Amendment claim (Claim 3), their argument fails for similar reasons. Their personal property is on Caltrans' property without permission, and they have received more than adequate notice regarding potential removal, consistent with the *Sanchez* settlement. No unreasonable seizure has therefore occurred.

### 4. *Plaintiffs' State-Created Danger Doctrine Claims Fail (Claims 1 and 2)*

Plaintiffs contend that Caltrans is violating the state-created danger doctrine and that irreparable

11

injury or death is likely to result from breaking up the camp and from exposure to Covid-19.[5] To state a cause of action under 42 U.S.C. § 1983 for deprivation of constitutional rights by a private actor as a result of a state-created danger, a plaintiff must plead: (1) that the state official participated in creating a dangerous condition, and (2) that the state official "acted with deliberate indifference to the known or obvious danger in subjecting the plaintiff to it." *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996). Moreover, a defendant's actions must be the proximate cause of the alleged injury, and the affirmative act must create a foreseeable, actual, particularized injury. *Id.; Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018).

Plaintiffs do not allege facts necessary to satisfy either requirement. Plaintiffs contend that, outside of their current encampment, they could at some point experience violence at the hands of unknown individuals or be exposed to COVID-19. However, such allegations are far too speculative to support the requisite causal connection between Caltrans's actions and any injury to Plaintiffs. Indeed, the risk of violence or exposure to COVID-19 also currently exists within the Wood Street encampments. Removal does not "plac[e] Plaintiffs in an inherently more dangerous situation than they had faced previously." *Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 433 (N.D. Cal. 2017).

Plaintiffs also cannot satisfy the deliberate indifference prong, which requires showing not only "an unusually serious risk of harm," but also the state defendant's "actual knowledge of (or at least, willful blindness to) that elevated risk," and "failure to take obvious steps to address that known, serious risk." *Harry A. v. Duncan*, 351 F. Supp. 2d 1060, 1071 (D. Mont. 2005) (citations omitted). Here, Caltrans has demonstrated anything but "willful blindness" to elevated risks to Plaintiffs or a failure to take obvious steps to address those risks. Caltrans' outreach efforts are noted above and detailed in the Declaration of Cheryl Chambers in Support of Defendants Caltrans, Dina El-Tawansy, and Toks Omishakin's Opposition to Plaintiffs' Motion for Temporary Restraining Order. Those efforts fully mitigate the dangers Plaintiffs allege. Moreover, the fundamental motivation behind removing Plaintiffs from the Wood Street encampments is the protection of Plaintiffs, Bay Area commuters, and the public from the regular fires that ravage the encampments (195 between March

---

[5] Presumably, this contention is anchored to the First Cause of Action based on the U.S. Constitution because, under the Second Cause of Action for a state-created danger under the California Constitution, no such cause of action exists (and it would be barred by sovereign immunity in any event under *Pennhurst*).

12

**DEFENDANTS CALIFORNIA DEPARTMENT OF TRANSPORTATION, DINA EL-TAWANSY AND TOKS OMISHAKIN'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

2020 and March 2022), killed one individual in April, and, as explained earlier, pose a catastrophic risk to West Oakland residents. That concern for Plaintiffs and the public is the very antithesis of the deliberate indifference required to make out a state-created danger claim. This Court came to a similar conclusion in *Reed v. City of Emeryville*, No. 21-CV-02781-WHO, 2021 WL 1817103, at *6 (N.D. Cal. May 6, 2021), when it found that ongoing housing construction created "a significant and established public safety need to clear" an adjacent encampment and that dispersing residents of the encampment into the surrounding community did not demonstrate deliberate indifference to a significant state-created danger.

Moreover, Wood Street is known to be dangerous among people experiencing homelessness, as Kinndra Martin, a former resident of Wood Street, testified in a declaration filed in another matter. Second Silver Decl. ¶ 7 and Exh. 2 ¶ 7 ("Wood Street is not a safe alternative" to Ashby West). Given the safety concerns at Wood Street that compelled Caltrans to clear the encampments, Plaintiffs cannot show that Caltrans' efforts to remove them from Wood Street demonstrates deliberate indifference or would put them in a more dangerous situation than they are in today.

Plaintiffs' contention that irreparable injury or death is likely to result from Defendants putting Plaintiffs in imminent peril of private violence, because Caltrans will destroy Plaintiffs' "hard-sided shelter" and "networks of mutual physical protection," is likewise speculative and does not rise to the level of asserting that an affirmative act by a state official demonstrating deliberate indifference will cause a foreseeable, actual, particularized injury.

### 5. *Plaintiffs' First Amendment Claim Fails*

Finally, Plaintiffs contend that they will suffer an irreparable Constitutional injury, clarifying that there are "obviously violations of the Fourth, Eighth, and Fourteenth Amendments." Plaintiffs' Motion for TRO at 11:21-22. Plaintiffs also allege "First Amendment claims of free association and the right to peaceably assemble and be in community together during hard times," Plaintiffs' Motion for TRO at 12:1-2. However, Plaintiffs offer no evidentiary support for these contentions, aside from those previous offered in the context of its other contentions.[6]

---

[6] Plaintiffs fail to elucidate how, for instance, the First Amendment right of assembly is violated by removing people from property, where they have no lawful right to reside, because a rash of fires raises serious and immediate safety concerns. The Supreme Court has found that two forms of "freedom of association" are protected by the U.S.

13

**DEFENDANTS CALIFORNIA DEPARTMENT OF TRANSPORTATION, DINA EL-TAWANSY AND TOKS OMISHAKIN'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

### 6. *Plaintiffs' ADA Claim Fails (Claim 4)*

It is noted that Plaintiffs do not argue in their motion for TRO that they are likely to succeed on the merits of their Title II of the Americans with Disabilities Act of 1990, even though Title II is one of their causes of action in their Complaint. Complaint at 9:26-11:9.[7]

### C. A Balance of Hardships Tips Sharply in Caltrans' Favor and the Public Interest Favors Denying the Motion

A plaintiff seeking a preliminary injunction must establish "that the balance of equities tips in his favor." *Winter*, 555 U.S. at 20. Under the "serious questions" version of the sliding scale test that this Court previously applied and that plaintiffs request in their moving papers, it must satisfy an even more demanding standard: that the balance of hardships tips sharply in their favor. *Cottrell,* 632 F.3d at 1135. Plaintiffs cannot meet this threshold element.

Here, even if one assumes the veracity of plaintiffs' allegations, the burden imposed on Plaintiffs to relocate away from property (that they have no ownership interest in to begin with) cannot compare with the hardships imposed on Caltrans by the frequent and potentially catastrophic fires occurring at the encampments that spurred Caltrans to act. The recent fatal fire in April and the presence of the EBMUD oxygen tanks in close proximity to the subject area underscore the urgency of clearing the encampment before a catastrophic event occurs. As the Ninth Circuit recently recognized, Plaintiffs' conclusory assertions that they have nowhere to go, even if they were accepted (which they need not be), are insufficient to overcome Caltrans' interest in maintaining its property and reducing the clear public safety and health risks associated with the encampment. *Where Do We Go Berkeley,* 32

---

Constitution: (1) the right to make choices about entering into and maintaining certain intimate human relationships and (2) the right to associate for the purpose of engaging in activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion. *Burnett v. San Francisco Police Dep't,* 36 Cal.App.4th 1177, 1188-1189. There is simply no factual basis for finding that either form is implicated here.

[7] To prevail on a Title II claim, a plaintiff must allege four elements: (1) plaintiff "is an individual with a disability;" (2) "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [plaintiff's] disability." *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir. 2002). Plaintiffs contend in their Complaint that three unspecified Plaintiffs in this action are qualified individuals with a disability, and that Defendants City of Oakland, County of Alameda, and Caltrans operate programs that do not accommodate people with disabilities. Complaint at 10:15-11:9. However, their Complaint does not specify which Plaintiffs this refers to, what their specific circumstances are, or how much time Plaintiffs would need for an accommodation. It is noted, for instance, that the Ninth Circuit found that imposing a delay of six months on Caltrans' program for clearing high-priority encampments is not a reasonable accommodation. *Where Do We Go Berkeley,* 32 F.4th at 864. Regardless, Plaintiffs make no argument in their Motion for TRO that any individual was excluded from or denied the benefits of the State's services, programs or activities by reason of a disability.

14

**DEFENDANTS CALIFORNIA DEPARTMENT OF TRANSPORTATION, DINA EL-TAWANSY AND TOKS OMISHAKIN'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

F.4th at 862, 864.

The public interest likewise clearly favors removing the portion of the encampments under the structure, given the imminent fire risks to the highway structure and the encamped individuals themselves, and the potential risk of catastrophic harm if fires generated at the encampment reached the nearby utility station.

### D. Plaintiffs Fail to Demonstrate Immediate Threatened Harm

Plaintiffs also cannot show irreparable harm. A plaintiff seeking injunctive relief "must show that he is under threat of suffering 'injury in fact' that is *concrete and particularized*; the threat must be *actual and imminent, not conjectural or hypothetical*; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (emphasis added). "[I]t is the plaintiff's burden to put forth specific evidence from which the court can infer irreparable harm." *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 760 n.8 (9th Cir. 2018). A risk of irreparable harm in the indefinite future is not enough. The harm must be shown to be imminent. *Midgett v. Tri-County Metro. Transp. Dist. of Oregon,* 254 F.3d 846, 850-851 (9th Cir. 2001).

Here, even assuming the veracity of plaintiffs' unsupported allegations, they point to no actual and imminent harm. Being relocated away from a community does not constitute irreparable harm as defined for these purposes. Even if plaintiffs' property is damaged as a result of being removed from the encampment, they can be compensated for their loss. A fire that causes mass casualties among encamped individuals, or severely damages the highway structure, or triggers an explosion at the nearby EBMUD wastewater treatment plant, by contrast, would cause truly irreparable harm.

### IV. CONCLUSION

Plaintiffs cannot establish the requisite elements for a temporary restraining order under any of the legal theories advanced in their motion. Plaintiffs have failed to demonstrate a likelihood of success on the merits or even raise serious questions going to the merits; cannot show irreparable harm; a balancing of hardships would clearly favor defendants in light of the frequency and severity of fires and the presence of the EBMUD facility; and the requested restraining order clearly would not be in the public interest. In consideration of the totality of the circumstances, the parties' hardships and interests,

15

equity compels the removal of the encampment at issue. Plaintiffs' application for a temporary restraining order should be denied.

Respectfully submitted,

DATED:  July 21, 2022

ERIN HOLBROOK
G. MICHAEL HARRINGTON
SAMUEL C. LAW
STEPHEN A. SILVER

By   /s/ Stephen A. Silver
Attorneys for Defendants STATE OF CALIFORNIA, acting by and through the Department of Transportation, DINA EL-TAWANSY, and TOKS OMISHAKIN

16

**DEFENDANTS CALIFORNIA DEPARTMENT OF TRANSPORTATION, DINA EL-TAWANSY AND TOKS OMISHAKIN'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**