ERIN HOLBROOK, Chief Counsel
G. MICHAEL HARRINGTON, Deputy Chief Counsel
SAMUEL C. LAW, Assistant Chief Counsel
STEPHEN A. SILVER, Deputy Attorney (SBN 214505)
MARK D. GUENZI, Deputy Attorney (SBN 278014)
Caltrans Legal Division – Bay Area Office
111 Grand Avenue, Suite 11-100, Oakland, CA 94612
Mail: P.O. Box 24325, Oakland, CA 94623-1325
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

Attorneys for Defendants STATE OF CALIFORNIA,
acting by and through the DEPARTMENT OF TRANSPORTATION ("CALTRANS"); DINA
EL-TAWANSY; and TOKS OMISHAKIN

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKSON BLAIN; JOHN JANOSKO; KELLIE CASTILLO; KELLY THOMPSON; NICOLAS GONZALEZ; ESTEBAN GONZALEZ; SHAWN WIDOMEN; PETER A. DODER; ALEX HEINE; MAYANA SPARKS; ADAM DAVIS; RICHARD MILTON; BENJAMIN MURAWSKI; RAMONA; GREG WIDOWMEN; JAMES FOREMAN; KEN SHEN; PIERRE DANIELS; PHIL JENKINS; DAVID BAHAR; KATHERINE CAVENER; JEREMY OLIVIERA; ABBY DILL; JESSICA HIGGIN; MATT SANATIVSAR; DUSTIN DENEGA; MATTHEW BUSTER; WILL SCHWERMA; DOUGLAS SOLLARS; JAY PRASAD, | Case No.: 3:22-cv-04178-WHO <br><br> **MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND RESPONSE TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** <br><br> Date of Hearing: August 26, 2022 <br> Time: 10:00 a.m. <br> Judge: Hon. William H. Orrick <br> Courtroom: 2 (17th Floor) |
|      Plaintiffs, | |
|      v. | |
| CALIFORNIA DEPARTMENT OF TRANSPORTATION; DINA EL-TAWANSY; CITY OF OAKLAND; ED REISKIN; BURLINGTON NORTHERN SANTA FE RAILROAD; SUSAN MURANISHI; GOVERNOR GAVIN NEWSOM; COUNTY OF ALAMEDA; TOKS OMISHAKIN; KATHERYN FARMER; LIBBY SCHAAF, | |
|      Defendants. | |

*CALIFORNIA DEPARTMENT OF TRANSPORTATION · LEGAL DIVISION*
*111 Grand Avenue, Suite 11-100*
*Oakland, California 94612*
*Telephone: (510) 433-9100, Facsimile: (510) 433-9167*

**TABLE OF CONTENTS**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

II.  STATEMENT OF FACTS ............................................................................... 4

    A.   The Property and Encampment ...................................................... 4

    B.   History of the Encampment Prior to Caltrans' Project.............................. 5

    C.   The Project ............................................................................... 6

    D.   Fires at the Wood Street Encampment .............................................. 7

    E.   Hazards to the Public...................................................................... 8

    F.   Hazards from EBMUD Facility ...................................................... 9

    G.   Outreach and Relocation Efforts .................................................... 10

III. STANDARD FOR ISSUING, MODIFYING OR DISSOLVING A TEMPORARY
     RESTRAINING ORDER/PRELIMINARY INJUNCTION ....................................... 11

IV.  PLAINTIFFS' CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT.. 12

V.   THE TEMPORARY RESTRAINING ORDER MUST BE DISSOLVED AS
     PLAINTIFFS CANNOT SUCCEED ON THE MERITS OF THEIR STATE-
     CREATED DANGER DOCTRINE CLAIM AND THE BALANCE OF
     HARDSHIPS AND PUBLIC INTEREST TIP HEAVILY IN FAVOR OF THE
     STATE ............................................................................................... 13

    A.   Plaintiffs Fail to Demonstrate a Likelihood They Will Succeed on the
    Merits or Serious Questions Going to the Merits......................................... 13

    B.   The Balance of Hardships Tips Sharply in Caltrans' Favor and the Public
    Interest Favors Denying the Motion........................................................ 18

         1.   Notice ...................................................................................... 18

         2.   Fire Risk .................................................................................. 19

         3.   Environmental Concerns ........................................................... 19

    C.   Plaintiffs Fail to Demonstrate Irreparable Harm ............................... 20

VI.  THERE IS NO BASIS FOR THIS COURT TO GRANT A PRELIMINARY
     INJUNCTION ........................................................................................ 21

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

A.    A Preliminary Injunction is Barred by the Eleventh Amendment. ............ 21

B.    A Preliminary Injunction Based on Plaintiffs' State-Created Danger Doctrine Claim Must be Denied on the Same Basis as Detailed Above ..................... 21

C.    A Preliminary Injunction Based on Any of Plaintiffs' Other Claims Would Be Unlikely to Succeed on the Merits ........................................................................ 21

    1.    Plaintiffs' State-Created Danger Doctrine Under the State Constitution Fails (Claim 2) ............................................................................................ 22

    2.    Plaintiffs' Claim for Unlawful Seizure of Property in Violation of the Fourth Amendment Fails (Claim 3) ........................................................... 22

    3.    Plaintiffs' ADA Claim Fails (Claim 4) ...................................................... 22

    4.    Plaintiffs' Eighth Amendment Claim Fails (Claim 5) ............................... 23

    5.    Plaintiffs' Freedom of Assembly Claim Fails (Claim 7) ........................... 23

    6.    Plaintiffs' Conspiracy and Monell Claims Fail (Claims 8 and 9) ............. 23

D.    A Balance of Hardships Tips Sharply in Caltrans Defendants' Favor and the Public Interest Favors Denying the Motion ......................................................... 23

E.    Plaintiffs Fail to Demonstrate Immediate Threatened Harm ..................... 24

VII. CALTRANS IS CONSTITUTIONALY AND STATUTORILY BARRED FROM FUNDING HOUSING, RELOCATION, OR SOCIAL SERVICES ......................... 24

VIII.    CONCLUSION .......................................................................................... 25

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adidas Am., Inc. v. Skechers USA, Inc.*,

   890 F.3d 747 (9th Cir. 2018) ................................................................. 21

*Alliance for Wild Rockies v. Cottrell*,

   632 F.3d 1127 (9th Cir. 2011) ......................................................... 12, 18

*Am. Trucking Ass'ns v. City of Los Angeles*,

   559 F.3d 1046 (9th Cir. 2009) ................................................................. 12

*Arc of California v. Douglas*,

   757 F.3d 975 (9th Cir. 2014) ...................................................... 2, 12, 18

*Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*,

   729 F.3d 937 (9th Cir. 2013) ................................................................. 12

*Brown v. California Dep't of Transp.*,

   321 F.3d 1217 (9th Cir. 2003) ............................................................... 23

*Caruso v. Hill*,

   2020 WL 4018141 (E.D. Cal. July 15, 2020) ....................................... 16

*Cobine v. City of Eureka*,

   250 F.Supp.3d 423 (N.D. Cal. 2017) ......................................... 3, 14, 16

*DeShaney v. Winnebago Cty. Soc. Svc. Dep't*,

   489 U.S. 189 (1989) ............................................................................... 13

*Ex Parte Young*,

   209 U.S. 123 (1908) ............................................................................... 12

*Givens v. Newsom*,

   459 F.Supp.3d 1302 (2020) ................................................................... 11

*Harry A. v. Duncan*,

   351 F.Supp.2d 1060 (D. Mont. 2005) ................................................... 16

**MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND RESPONSE TO ORDER TO SHOW CAUSE
RE: PRELIMINARY INJUNCTION**

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

*L.W. v. Grubbs,*

  92 F.3d 894 (9th Cir. 1996) ........................................................................................ 14

*Lindsey v. Normet,*

  405 U.S. 56 (1972) ................................................................................................... 3, 16

*Long v. Van de Kamp,*

  961 F.2d 151 (9th Cir. 1992) ................................................................................ 13, 21

*Martin v. City of Boise,*

  920 F.3d 584 (9th Cir. 2019) ...................................................................................... 23

*Martinez v. City of Clovis,*

  943 F.3d 1260 (9th Cir. 2019) .................................................................................... 13

*Mazurek v. Armstrong,*

  520 U.S. 968 (1997) .................................................................................................... 11

*Midgett v. Tri-County Metro. Transp. Dist. of Oregon,*

  254 F.3d 846 (9th Cir. 2001) ...................................................................................... 21

*Munaf v. Geren,*

  553 U.S. 674 (2008) .................................................................................................... 11

*Nken v. Holder,*

  556 U.S. 418 (2009) .................................................................................................... 12

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.,*

  810 F.3d 631 (9th Cir. 2015) ...................................................................................... 12

*Reed v. City of Emeryville,*

  568 F.Supp.3d 1029 (N.D. Cal. Oct. 26, 2021) ......................................................... 14

*Reed v. City of Emeryville,*

  No. 21-CV-02781-WHO, 2021 WL 1817103 (N.D. Cal. May 6, 2021) ..................... 17

*Sacramento Homeless Union v. County of Sacramento,*

  2022 WL 3019735 (E.D. Cal., July 29, 2022, No. 222CV01095TLNKJN) .............. 3

*Sanchez v. California Dep't of Transp.,*

  2020 WL 9456677 (Cal. Super. 2020) .................................................................... 4, 22

MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND RESPONSE TO ORDER TO SHOW CAUSE
RE: PRELIMINARY INJUNCTION

*Sanchez v. City of Fresno*,

   914 F.Supp.2d 1079 (E.D. Cal. 2012) ......................................................... 3, 16, 17

*Shen v. Albany United School Dist.*,

   436 F.Supp.3d 1305 (N.D. Cal. 2020) .............................................................. 22

*Shipp v. Schaaf*,

   379 F. Supp. 3d 1033 (N.D. Cal. 2019) ............................................................ 23

*Sullivan v. City of Berkeley*,

   No. C 17-06051 WHA, 2017 WL 4922614 (N.D. Cal. Oct. 31, 2017) ..................... 22

*Summers v. Earth Island Inst.*,

   555 U.S. 488 (2009) ................................................................................. 20

*Veterans for Peace Greater Seattle, Chapter 92 v. City of Seattle*,

   No. C09-1032 RSM, 2009 WL 2243796 (W.D. Wash. July 24, 2009) ..................... 17

*Where Do We Go Berkeley*,

   32 F.4th 852 (9th Cir. 2022)................................................................. 21, 23, 24

*Winter v. Natural Res. Def. Council*,

   555 U.S. 7 (2008) ................................................................................ 2, 18

**Statutes**

California Vehicle. Code § 21960................................................................... 23

Health and Safety Code § 50216 ................................................................. 25

Health and Safety Code § 50250 ................................................................. 25

Streets & Highways Code § 104.30............................................................... 10

Streets and Highways Code  § 253.1 ............................................................. 23

Welfare and Institutions Code §17000............................................................ 25

**Regulations**

23 C.F.R. § 710.403 .............................................................................. 25

MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND RESPONSE TO ORDER TO SHOW CAUSE
RE: PRELIMINARY INJUNCTION

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

## NOTICE OF MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND RESPONSE TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

### TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on August 26, 2022, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 2 – 17th Floor of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, pursuant to Rule 65(b)(4) of the Federal Rules of Civil Procedure ("FRCP"), defendants State of California, acting by and through the Department of Transportation; Dina El-Tawansy; and Toks Omishakin will and hereby do move for an order to dissolve the temporary restraining order issued by the Court in this matter.

Defendants base this Motion on this Notice of Motion, the Memorandum of Points and Authorities below, the declarations in support of the motion, Request for Judicial Notice, all pleadings and papers filed in this action, and on such other and further evidence as may be submitted at the time of hearing on this Motion or otherwise.

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants the State of California, acting by and through the Department of Transportation ("California Department of Transportation" or "Caltrans"), Dina El-Tawansy, and Toks Omishakin (collectively, "Caltrans Defendants") request this Court to dissolve the temporary restraining order and deny any request for a preliminary injunction.

On July 22, 2022, this Court modified the temporary restraining order ("MTRO") and provided a written statement of decision, finding there were "serious questions going to the merits" of plaintiffs' claim under the Fourteenth Amendment for a state-created danger and that the balance of equities sharply favored plaintiffs for a limited period of time. The MTRO further directed the restrained parties to engage in good-faith discussions to come up with a plan to "provid[e] individuals within the encampment with shelter and services after the closure." MTRO 9:8-14. The order further indicated that "A concrete, detailed, and realistic plan for doing so would constitute grounds for the defendants to move to dissolve the TRO." *Id.*

Here, Caltrans contends that (1) some of the facts presented by plaintiffs and relied on by the Court regarding "significant questions going to the merits" of a state-created danger are

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

inaccurate; (2) plaintiffs' claims are insufficient to support injunctive relief under the state-created danger doctrine; (3) there is no legal basis to condition the exercise of Caltrans' possessory interests in the State Highway System on providing shelter or services to persons trespassing on the Caltrans property; (4) Caltrans, on its own, cannot comply with the Court's directive to create a realistic plan to provide relocation, shelter, and services to plaintiffs as Caltrans is constitutionally and statutorily barred from expending funds for housing or social services, and is entirely reliant on City of Oakland ("City") and County of Alameda ("County"), who have statutory authority and general powers to provide such services; and (5) for many months prior to this litigation, Caltrans had been asking City and County officials to address homelessness at the Wood Street encampment, while supporting grant applications and leasing Caltrans property to City for construction and operation of shelters.

Caltrans also responds to the order to show cause regarding issuance of a preliminary injunction. The causes of action for which the Court did not find a likelihood of success on the merits are addressed briefly. And for the same reasons stated in the motion to dissolve the temporary restraining order, the state-created danger doctrine does not support the issuance of a preliminary injunction.

To support a preliminary injunction or temporary restraining order, plaintiffs must show (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of the requested relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). Caltrans has produced facts sufficient to demonstrate that plaintiffs cannot succeed on any of these elements.

First, as to likelihood of success on the merits, even under the "serious question" standard plaintiffs must still have a "fair chance of success." *Arc of California v. Douglas*, 757 F.3d 975, 994 (9th Cir. 2014). The Ninth Circuit has not applied the state-created danger doctrine in the unsheltered context. The district courts that have applied the test granted relief only upon a showing of a particularized harm greater than that to which plaintiffs are already exposed. Exposure to the pre-existing "generalized dangers of living on the street" are not sufficient. *Sacramento Homeless Union v. County of Sacramento*, 2022 WL 3019735, at *8 (E.D. Cal., July

2

29, 2022, No. 222CV01095TLNKJN); *Cobine v. City of Eureka*, 250 F.Supp.3d 423, 433 (N.D. Cal. 2017). Plaintiffs already are subject to the dangers of homelessness; removal from Caltrans property does not change this status. In fact, in the last months, two persons in the encampment have died, one due to fire and one struck by a train. Silver Decl., Dkt. 30-3, ¶ 9, Ex. 4; Despain Decl. ¶ 20. There is no constitutional right to shelter (*Lindsey v. Normet*, 405 U.S. 56 (1972); *Sanchez v. City of Fresno*, 914 F.Supp.2d 1079, 1101 (E.D. Cal. 2012)), nor does any case recognize a right of a trespasser upon real property to services, relocation, or the provision of shelter prior to removal. Moreover, Caltrans is barred from providing housing or social services by the State Constitution and statute.

Second, the balance of equities tips heavily in favor of the public. The MTRO recognizes Caltrans has compelling public safety concerns. MTRO 6:17-7:3. As to concerns of notice, by the time of the hearing plaintiffs will have had 42 days' notice—more than sufficient to allow plaintiffs to make alternative plans, relocate their personal property, and receive available government assistance. MTRO 6:12-14. There have been approximately 230 fires at the encampment since March 2020. RJN ISO Motion to Dissolve TRO ¶¶ 1-2, Ex. 1-2. The July 11, 2022 fire in particular damaged a support column to the I-880 highway structure and came within approximately 200-215 feet of a pair of East Bay Municipal Utilities District ("EBMUD") high purity oxygen facilities. Baskerville Decl. ¶¶ 16-17, 24, Ex. A, I; Gray Decl. ¶¶ 10-11. Had the same fire occurred in the fall, when "Diablo Winds" blow in the direction from the encampment to the EBMUD facility, this could have proved catastrophic; the change in wind direction occurs typically in September, October and November. Null Decl. ¶¶ 15-20; McMullen Decl., Ex B, p. 3; Gray Decl. ¶¶ 12-14. The encampment further generates biohazardous waste that is disposed of on site or sent directly into storm drains by the encampment occupants. Baskerville Decl. ¶ 22, Ex. P-Q; Caputo Decl. ¶¶ 14-17, Ex. B-C. The encampment is also adjacent to active rail lines which, as noted above, has already led to one death in April 2022. Despain Decl. ¶ 20.

Third, there is no showing of irreparable harm. Plaintiffs are occupying Caltrans' property, to which they have no ownership interest. As for their personal property, Caltrans is not

CALIFORNIA DEPARTMENT OF TRANSPORTATION · LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

**MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND RESPONSE TO ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

*CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION*
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

preventing plaintiffs from removing personal property from the encampment. Moreover, pursuant to the terms of the settlement agreement in the class-action matter *Kimberlee Sanchez, et al. v. California Department of Transportation*, Alameda County Superior Court Case No. RG16842117, as amended by *Sanchez v. California Dep't of Transp.*, 2020 WL 9456677 (Cal. Super. 2020) ("Sanchez"), Caltrans is required to store personal property removed from the subject encampment. Silver Decl., Dkt. 30-4, ¶ 6, Ex. 1. The *Sanchez* class action was litigated by numerous groups including the ACLU and provides a framework for redress of grievances in the state court. To the degree Plaintiffs contend their property was improperly seized and destroyed, they can claim compensation.

Fourth, dissolution of the MTRO and denial of any request for a preliminary injunction are in the public interest. The balancing of the equities and the exigency of the risks favor the public interest in the immediate removal of the encampment.

In sum, plaintiffs cannot satisfy the requirements for injunctive relief. The MTRO should therefore be dissolved, and no preliminary injunction should be issued.

## II.      STATEMENT OF FACTS

### A.  The Property and Encampment

The Wood Street encampment encompasses a sprawling area both in and adjacent to Caltrans' right-of-way. Prior to Caltrans initiating a cleanup and removal project in April 2021, the encampment began near the intersection of Frontage Road and 14th Street and ended just beyond the intersection of Wood Street and 34th Street. The encampment occupies property owned by Caltrans, City, Burlington Northern Santa Fe (BNSF), and private property. See Baskerville Decl. ¶ 5, Ex. A. Aerial drone photography of the current encampment is attached as Exhibits B-C to the declaration of Jason Fries. Fries Decl. ¶¶ 11-12, Ex. B-C.

The encampment on Caltrans property occupies a controlled access freeway that is not open to the public and not designed for public access. Even after Caltrans' two primary contractors have removed over 189 tons to debris and hazardous waste (Maintenance Contractor—Singh Group) and 3,680 cubic yards of debris and 365 abandoned or stolen vehicles (Construction contractor—Marinship Development Interest LLC), large portions of the Phase 3

4

area remain covered with debris fields with numerous vehicles, creating significant combustible fuel loads. Baskerville Decl. ¶¶ 13-14; Despain Decl. ¶ 21.

Contrary to the plaintiffs' assertions, there are no utilities, sanitation, or facilities in the encampment. Electrical power is tapped illegally from utility vaults and pull boxes of the public entities, with electrical cords strung across the encampment. Despain Decl. ¶ 22. Similarly, water is sourced from taps or hose bibs of the public entities or private property owners and piped through lengthy hoses to the encampments. *Id.* Heating and cooking appears to be done via electrical devices, open flames, or propane burners. There are numerous propone cylinders stored or discarded in the encampment. RJN ISO Motion to Dissolve, Ex. 3 at 5:4-6:21, 7:12-14, 8:24-9:10, 9:17-20; Ex. 4 at 3:21-25; Depain Decl. ¶ 22. There are no restrooms, shower facilities, or sewage lines. To eliminate waste, occupants use ditches, utility vaults, electrical pull boxes, other on-site containers, or Caltrans storm drains. Despain Decl. ¶ 23, Ex. K-L; Baskerville Decl. ¶ 22; Caputo Decl., ¶¶ 14, 16, Ex. C. The many RVs, which may be used for showers or restrooms, drain their tanks into Caltrans storm drains. Despain Decl., ¶ 23, Ex. L; Caputo Decl. ¶ 16, Ex. C.

**B.  History of the Encampment Prior to Caltrans' Project**

The Court relied on plaintiffs' representation that an encampment as existed on Caltrans property for between four and six years. MTRO 5:7-8. This is false. In 2018 there were no encampments on Caltrans property. Despain Decl. ¶ 5, Ex. A, B. Further, when encampments were discovered in early 2019, the encampments were cleaned and removed. Caltrans' maintenance personnel and contractors cleared all of Caltrans property within the drip line fencing along the bridge structures in February, March, April, May, July, and October of 2019. Despain Decl. ¶¶ 6-10, Ex. C, D. Caltrans further placed k-rail along service roads to limit access to its property. Despain Decl. ¶ 13.

Over the winter of 2019 and early 2020, persons experiencing homelessness damaged Caltrans drip line fencing and occupied areas underneath the bridge structures. A cleanup and removal was scheduled for January 2020, but was canceled. In response to the once-in-a-century Covid-19 global pandemic, in March 2020 Caltrans issued Maintenance Policy Directive 20-02

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

to halt encampment removals except as necessary for public safety. Despain Decl. ¶¶ 11-12. Ex. F.[1]

The Wood Street encampment continued to grow during the Covid-19 pandemic due to the public entities' moratoria on removals. In November 2020, the City closed the adjacent "Game Changers" lot on Wood Street just north of West Grand Avenue, leading to many individuals relocating onto Caltrans property. Despain Decl. ¶¶ 14, 16, Ex. G. In December 2020, advocates and persons experiencing homelessness began construction of unpermitted structures that became known as the "COB on Wood" community kitchen. Despain Decl. ¶ 14.

Throughout 2021, the Wood Street encampment continued to expand and the debris and combustible fuel load dramatically increased. A major fire under the West Grand Avenue bridge structure occurred in January 2021. Despain Decl., ¶ 15.

**C. The Project**

In April 2021, Caltrans initiated the current three-phase project to clean and clear the Wood Street encampment and construct cast-in-place concrete barrier topped with fencing to prevent reoccupation of the site. Baskerville Decl. ¶¶ 4-5, 9. Phases 1 and 2, the portions of the encampment south of West Grand Avenue, were cleaned and cleared to the degree possible without the removal of the encamped between May and November 2021. Baskerville Decl. ¶¶ 9-10. Between November 2021 and March 2022, Caltrans contractors returned to the site on an approximately biweekly basis to reset k-rail displaced by occupants, remove debris, and remove abandon or stole vehicles dumped at the site. Baskerville Decl. ¶ 11.

By March 2022, the fuel loads within Phase 2 had grown significantly and the ongoing pattern of multiple fires every month necessitated clearing the area under the bridge structures as a "Priority 1" removal under Caltrans Interim Guidance on Encampments. The debris field within Phase 2 encompassed acres of material that was several feet deep. Baskerville Decl. ¶ 12, Ex. E. The encampments within Phase 1 and 2 were removed in March and April 2022. Baskerville Decl. ¶ 12. As a temporary measure, persons experiencing homelessness were

---

[1] Removals for public safety, however, continued. In May 2020, unhoused persons re-occupied the Frontage Road bridge abutment, which was an immediate public safety hazard. Despain Decl. ¶ 13, Ex C.

permitted to relocate to the open area between the bridge structures within Phase 2. Baskerville Decl. ¶¶ 12-13. In total, Caltrans' construction contractor removed approximately 225 abandoned or stolen vehicles and 2,480 cubic yards of debris from Phase 1 and 2. Baskerville Decl. ¶ 13.  In addition, Caltrans' maintenance contractor removed 189.6 tons of debris and hazardous/biohazardous waste from Phase 1 and 2. Despain Decl. ¶ 21.

On May 5, 2022, the cleaning and clearing of Phase 3 was initiated. From May 5, 2022, to July 19, 2022, Caltrans personnel and contractors were on site working in Phase 3 on all workdays. Caltrans removed 140 vehicles from Phase 3 determined by the CHP to be abandoned or stolen and 1200 cubic yards of material debris and hazardous waste. Caltrans installed k-rail and cast-in-place concrete barrier along its northern property boundary between BNSF and Caltrans right-of-way. Baskerville Decl. ¶ 14. After the July 11, 2022 fire damaged a bridge column, shut down the MacArthur Maze for approximately four hours, and threatened the EBMUD wastewater treatment facility, Caltrans posted notices for removal of the remainder of the Wood Street encampment on July 15, 2022. The removal was phased with portions of the encampment cleanup noticed to begin July 20, July 25, and August 1. Baskerville Decl. ¶¶ 16-19. This final removal of the Wood Street encampment from Caltrans property is the subject of plaintiffs' Complaint.

**D.  Fires at the Wood Street Encampment**

The Wood Street encampments have been the site of numerous fires over the past several years. From March 2020 to the present, the Oakland Fire Department responded to 231 fires in the Wood Street encampment. RJN ISO Motion to Dissolve TRO ¶¶ 1-2, Ex. 1-2. Some of the major or damaging fires include fires in February 2019, January 2021, September 18, 2021, April 5, 2022, and July 11, 2022. Baskerville Decl. ¶¶ 8, 15-16, Ex. B-D, G-I. A fire left an encamped individual dead on April 5, 2022, and another on March 10, 2022 killed two dogs and burned three RVs. Silver Decl., Dkt. 30-3, ¶¶ 9, 11, Ex. 4, 6; Despain Decl. ¶ 20.

The July 11, 2022 fire was a massive fire that burned several RVs and caused the closure of portions of Interstates 80, 580, and 880 at the MacArthur Maze interchange for three to four hours. Silver Decl., Dkt. 30-3, ¶¶ 12-14, Ex. 7-9. Baskerville Decl. ¶ 17. This fire was located in

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

CALIFORNIA DEPARTMENT OF TRANSPORTATION · LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

a homeless encampment on Burlington Northern Santa Fe (BNSF) railroad property in the northern portion of the Wood Street encampment, about 500 feet outside Caltrans property but within Caltrans' aerial easement for its highway structure. The fire ignited a wood trestle directly underneath the EB I-80 to SB I-880 connector structure. The I-880 structure was damaged by the intensity and proximity of the fuel load from the adjacent homeless encampments and wood trestle. The fire caused an approximately 30-foot-high by 6-foot-wide spall on the surface concrete on the bridge column, which exposed some of the metal rebar. Baskerville Decl. ¶¶ 16-17, Ex. I.

The fire risk is exacerbated by the use of propane and open flames for heating and cooking within the encampment. McMullen Decl. Ex. B at pp. 4-5; RJN ISO Motion to Dissolve, Ex. 3 at 5:4-6:21, 7:12-14, 8:24-9:10, 9:17-20; Ex. 4 at 3:21-25. The numerous pressurized cylinders in the encampment, such as propane tanks, explode when heated and pose a risk to the encamped and first responders. McMullen Decl. Ex. B at pp. 4-5; RJN ISO Motion to Dissolve, Ex. 4 at 3:14-25. Further access for large vehicles is limited and the nearest hydrants and hundreds of feet away on Wood Street. Baskerville Decl. ¶¶ 6-7; McMullen Decl. Ex. B at p. 3. Propane tanks further increase the fire risk and danger to the public, including the occupants. McMullen Decl. Ex. B at p. 4; RJN ISO Motion to Dissolve, Ex. 3-4.

### E.  Hazards to the Public

The Wood Street encampment creates a number of hazards to the encamped, Caltrans employees, nearby businesses, and the public at large. As discussed above in section II. D, the encampment generates significant flammable fuel loads and has an extreme history of fires. Fires underneath or adjacent to bridge structures risk damaging, weakening, or collapsing the structure—as occurred on I-85 in Atlanta in 2017. Baskerville Decl. ¶ 17; *cf.* Silver Decl., Dkt 30-3, ¶ 8 and Ex. 3. Reinforced concrete can be damaged, causing the protective outer layers to crack and spall and thus exposing the reinforcing metal rebar. The metal rebar itself can be damaged by heat and differentials in coefficients of thermal expansion can likewise create stresses and damage the structures. Fires have damaged Caltrans bridge structures, requiring

repair or reconstruction of portions of the bridge. Bridge structures are costly to construct, and a single span can run into the millions or tens of millions of dollars. Baskerville Decl. ¶ 17.

Further, fires can disrupt commerce and the traveling public in and around the MacArthur Maze interchange, which carries hundreds of thousands of vehicles every day. Kyutoku Decl. ¶¶ 4-6; Baskerville Decl. ¶ 17. Smoke from the fires also exposes the public and nearby businesses to toxic pollutants, including carcinogens. Caputo Decl. ¶ 18. Similarly, the encampment is an environmental hazard with toxic and human waste being dumped or washed into Caltrans storm drains which drain directly to the San Francisco Bay. Despain Decl. ¶ 23, Ex. K-L; Baskerville Decl. ¶ 22; Caputo Decl., ¶¶ 14, 16, Ex. C.  The untreated disposal of human waste is also a vector for the spread of infectious diseases. Asfour Decl. ¶¶ 17-20.

Finally, the encampment poses a danger to the operation of active rail tracks and to the encamped, which as noted previously resulted in a fatality in April. Despain Decl. ¶ 20.

**F.  Hazards from EBMUD Facility**

Perhaps the most compelling concern, however, is that EBMUD has a wastewater treatment plant with facilities that are approximately 200 feet west of the encampment fire that occurred on July 11, 2022. Baskerville Decl. ¶ 18; Gray Decl. ¶ 11, Ex. A. EBMUD's Main Wastewater Treatment Plant ("MWWTP") treats approximately 55 million gallons of wastewater sewage per day. Gray Decl. ¶ 9. The facility serves approximately 740,000 people and is the MWWTP for Oakland and surrounding cities. *Id.* at ¶¶ 7-8. The treated water is discharged directly to the San Francisco Bay. *Id.* at ¶ 9.

EBMUD's MWWTP has two high purity oxygen (HPO) plants, each capable of producing 90 tons of HPO per day that are essential to operations—without the oxygen plants EBMUD would be forced to discharge untreated sewage to the San Francisco Bay. *Id.* at 10.

Fires are much more violent and dangerous when in contact with pure oxygen, and most materials will burn in this environment, whereas they may not if exposed to a fire in air. *Id.* at 11; McMullen Decl. Ex. B at p. 3. The July 11, 2022 fire was blown away from the HPO plants by the prevailing wind, but if the wind direction had turned toward EBMUD's MWWTP, the risk to the HPO plants would have been high. Gray Decl. at ¶ 12. The MWWTP electrical substation is

9

*CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION*
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

similarly at risk from fires in the encampment and could potentially put the MWWTP out of service for many months. *Id.* at ¶¶ 13-14. Clearing the encampment is urgent, as beginning in September, the Bay Area experiences the "Diablo Winds" weather pattern which can blow fires from the encampment towards the MWWTP.  Null Decl. ¶¶ 15-20; McMullen Decl., Ex B. at p. 3.

There have been propane tanks explosions in the encampment fires as well as bullets and golf balls shot from the encampment to EBMUD's MWWTP endangering EBMUD employees. Chambers Decl. Ex. C.

**G.  Outreach and Relocation Efforts**

Over the last two and a half years, Caltrans has worked diligently with its local partners to coordinate outreach efforts at Wood Street encampments on Caltrans' right-of-way. While Caltrans is constitutionally barred from funding non-transportation projects, Caltrans has collaborated with the City by leasing five properties to the City for operation as shelter sites for a nominal rate of one dollar a month, pursuant to Streets & Highways Code § 104.30. McDaniel Decl. ¶¶ 4-8. The five shelter sites have 196 beds and 15 RV parking sites. *Id.*

Caltrans has further provided support to the City in seeking grants to address the Wood Street encampment. In December 2021, Caltrans provided a letter of support for a City grant application to construct a 100-bed community cabin site, with the understanding that 40 of the beds would be used to assist individuals encamped on Caltrans right-of-way at Wood Street. Chambers Decl. ¶ 13, Ex. A. The grant was ultimately only partially funded and the City reduced the scale of the planned cabin site to 40-50 beds. *Id.*

In March, April, and May 2022, Caltrans requested the City and County provide outreach and shelter to the Wood Street encampment. Chambers Decl. ¶ 14. On May 9, 2022, Caltrans was notified that the City did not have the capacity to conduct outreach at the Wood Street encampment for at least six weeks. *Id.* Concurrently with these requests, Caltrans examined the feasibility of offering to lease its northern Mandela Parkway maintenance yard to the City as a shelter site for the Wood Street encampment. This offer was presented to the City on April 13, 2022. *Id.* at ¶ 15-16. Caltrans contacted a shelter site developer and received a conceptual plan for a 100-bed cabin community shelter with a development and two-year operations estimate of

10

13 million dollars. *Id.* at ¶ 16. This information was provided to the City in April-June 2022. *Id.* The City, however, asserts it lacks funds for the site. Chambers Decl. ¶ 15.

Following the July 11, 2022 fire, on or about July 15, 2022, Caltrans External Affairs notified various advocate groups and local partners of Caltrans' intent to clear the area in Phase 2 and Phase 3 at Wood Street. *Id.* at 17. The clearing was planned in three stages, in an effort to provide additional notice to those affected. The notices were posted on Friday, July 15, 2022, with Stage 1 (northern portion of Phase 3) to be cleared on July 20, 2022, Stage 2 (southern portion of Phase 3) to be cleared on July 22, 2022, and Stage 3 (central portion of Phase 2) to be cleared on August 1, 2022. Baskerville Decl. ¶ 12. The form of the posted notice was consistent with the terms of the *Sanchez* settlement. *Cf.* Silver Decl., Dkt. 30-4, Ex. 1 at 76:11-78:16.

On July 19, 2022, Caltrans employees posted a separate notice on all structures with a removal date of July 25, 2022. Plaintiffs filed suit and moved this Court for a temporary restraining order, which the Court granted.

## III.    STANDARD FOR ISSUING, MODIFYING OR DISSOLVING A TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION

Federal Rule of Civil Procedure 65 authorizes courts to issue a temporary restraining order or preliminary injunction. Rule 65(b)(4) authorizes a party to move to dissolve or modify a temporary restraining order.

A temporary restraining order or preliminary injunction is an "extraordinary and drastic remedy." *Munaf v. Geren,* 553 U.S. 674, 690 (2008). "'The propriety of a temporary restraining order, in particular, hinges on a significant threat of irreparable injury [ ] that must be imminent in nature.'" *Givens v. Newsom,* 459 F.Supp.3d 1302, 1310 (2020) (quoting *Gish v. Newsom,* 2020 WL 1979970, at *3 (April 23, 2020)) (alteration in original). "The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Givens,* 459 F.Supp.3d at 1309. The moving party "carries the burden of persuasion" "*by a clear showing*." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (italics in original).

Plaintiffs seeking these forms of injunctive relief must demonstrate: (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1   relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public

2   interest. *Am. Trucking Ass'ns v. City of Los Angeles,* 559 F.3d 1046, 1052 (9th Cir. 2009). Where a

3   plaintiff fails to demonstrate likelihood of success on the merits, the district court need not "consider the

4   remaining *Winter* elements." *Association des Eleveurs de Canards et d'Oies du Quebec v. Harris,* 729

5   F.3d 937, 953 (9th Cir. 2013) (internal citations omitted).

6        In the Ninth Circuit, courts may also issue temporary restraining orders when there are "serious

7   questions going to the merits ***and*** a "balance of hardships that tips ***sharply*** towards the plaintiff" so

8   long as the remaining two *Winter* factors are also present. *Alliance for Wild Rockies v. Cottrell,* 632

9   F.3d 1127, 1135 (9th Cir. 2011) (emphasis added). A plaintiff "must establish that irreparable harm is

10  *likely*, not just possible." *Id.* at 1131. "The irreducible minimum [for a preliminary injunction] ... is that

11  the moving party demonstrate a *fair chance of success* on the merits or questions serious enough to

12  require litigation. *No chance of success at all will not suffice.*'" *Arc of California v. Douglas*, 757 F.3d

13  975, 993-94 (9th Cir. 2014) (emphasis added). As the Supreme Court explained, "[i]t is not enough that

14  the chance of success on the merits be 'better than negligible.' [Citation.] Even petitioner acknowledges

15  that '[m]ore than a mere "possibility" of relief is required.'" *Nken v. Holder*, 556 U.S. 418, 434 (2009).

16       For injunctive relief there must be "a sufficient nexus between the claims raised in a motion for

17  injunctive relief and the claims set forth in the underlying complaint itself." *Pac. Radiation Oncology,*

18  *LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). "The relationship between the preliminary

19  injunction and the underlying complaint is sufficiently strong where the preliminary injunction would

20  grant relief of the same character as that which may be granted finally." *Id.* (internal quotations

21  omitted).

22  **IV.   PLAINTIFFS' CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT**

23       Plaintiffs' claims against Caltrans Defendants are barred by the Eleventh Amendment. Caltrans

24  Defendants' arguments on this issue are briefed in detail in its Motion to Dismiss Complaint, which is

25  incorporated herein by this reference. Motion to Dismiss Complaint, Dkt. 56, at 4-8. Plaintiffs fail to

26  allege direct conduct by state officials in connection with the constitutional violations and the claims

27  are therefore barred by the Eleventh Amendment. *Ex Parte Young,* 209 U.S. 123, 157 (1908); *Long v.*

28  *Van de Kamp,* 961 F.2d 151, 152 (9th Cir. 1992). Accordingly, the MTRO should be dissolved, and

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

**MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND RESPONSE TO ORDER TO SHOW CAUSE
RE: PRELIMINARY INJUNCTION**

this Court has no basis to issue a preliminary injunction.

## V. THE TEMPORARY RESTRAINING ORDER MUST BE DISSOLVED AS PLAINTIFFS CANNOT SUCCEED ON THE MERITS OF THEIR STATE-CREATED DANGER DOCTRINE CLAIM AND THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST TIP HEAVILY IN FAVOR OF THE STATE

### A. Plaintiffs Fail to Demonstrate a Likelihood They Will Succeed on the Merits or Serious Questions Going to the Merits

In the MTRO, Dkt. 40, this Court did not find that Plaintiffs had shown a likelihood of success on the merits as to any of its claims. This Court did find that Plaintiffs had raised "serious questions going to the merits," sufficient to invoke *Cottrell,* with respect to Plaintiffs' Fourteenth Amendment state-created danger doctrine claim. MTRO at 5:2-6:11. This Court expressly found that "[t]he plaintiffs have not shown a likelihood of success on the merits, or serious questions going to the merits, of their other claims." MTRO at 7:15-8:14.

Plaintiffs contend that Caltrans is violating the state-created danger doctrine and that irreparable injury or death is likely to result from breaking up the camp and from exposure to Covid-19. Plaintffs' Mot. for TRO, Dk. 2 at 7:28-9:5. The state-created danger doctrine is a judicially created exception to the general rule that the Fourteenth Amendment imposes no duty on the state to protect members of the public against private violence. *See DeShaney v. Winnebago Cty. Soc. Svc. Dep't,* 489 U.S. 189 (1989). To state a cause of action under 42 U.S.C. § 1983 for deprivation of constitutional rights by a private actor as a result of a state-created danger, a plaintiff must plead: (1) that a state official's affirmative actions created or exposed them to an actual, particularized danger from a third party that they would not have otherwise faced; (2) that the injury suffered was foreseeable; and (3) that the state official was deliberately indifferent to the known dangers. See *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019). With respect to the first element, "[t]he relevant question is whether 'state action creates or exposes an individual to a danger which *he or she would not have otherwise faced.*' " *Id.* at 1271-72 [Citation] (emphasis added). For the second element, plaintiffs must show that the "ultimate injury" was "foreseeable." As for the third element, "the standard is higher than gross negligence, because it requires a 'culpable mental state.'" *Id.* at 1274. "The state actor must 'recognize an unreasonable risk and actually intend to expose the plaintiff to such risks without regard to the consequences to the plaintiff.'" *Id.* (internal citations omitted). This deliberate indifference must

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

13

be "to a known, or so obvious as to imply knowledge of, danger, by a supervisor who participated in creating the danger." *L.W. v. Grubbs,* 92 F.3d 894, 900 (9th Cir. 1996).

Moreover, in the unsheltered context, a plaintiff must establish "that defendants put them in a more dangerous situation than they had been in." *Reed v. City of Emeryville,* 568 F.Supp.3d 1029, 1039-1040 (N.D. Cal. Oct. 26, 2021). "In the absence of particular allegations that the state action put the Plaintiffs in an inherently dangerous situation, the Court is bound to find that the generalized dangers of living on the street preexisted Plaintiffs' relocation …." *Cobine,* 250 F.Supp.3d at 433. "The general circumstances of being homeless … cannot be minimized. Without allegations of intentional eviction during precarious weather or other facts indicating deliberate indifference to the safety and welfare of the population, the Court must dismiss the claim. [Citation.]" *Id.*

Plaintiffs do not allege facts necessary to satisfy these requirements. Plaintiffs contend that "[b]y clearing the homeless encampments at Wood Street and failing to provide alternative safe housing, where those acts have made Plaintiffs and other similarly situated unhoused persons at greater risk of COVID-19 infection, injury, and death, Defendants have affirmatively placed and continue to place Plaintiffs in known or obvious danger." Complaint at 8:8-11. The MTRO cites a "constellation of concrete risks" such as (1) the long standing nature of the encampment and the five day notice to vacate; (2) the occupants may lose shelter, possessions, communication connections, or access to hygiene; (3) CDC guidelines recommend allowing encampments to remain if no housing options are available, and (4) there is no evidence occupants would be provided shelter once removed. MTRO, Dk. 40, 5:2-20.

As an initial matter, the Court's analysis is founded on facts that are inaccurate. Specifically, the MTRO states that plaintiffs have lived at Wood Street for four-to-six years, MTRO at 5:7-8, and that the encampment offers "facilities for hygiene," MTRO at 5:10-11.  As detailed above in section II. B, there was no encampment on Caltrans property in 2018 and the encampments that appeared in 2019 were repeatedly cleaned and fully cleared from underneath the bridge structures.  Despain Decl. ¶¶ 6-11, Ex. A-D. Further, as detailed above in section II. A, the encampment has no electrical power, water, heat, sanitation, or sewer facilities. Despain Decl. ¶ 23; Baskerville Decl., ¶ 22. The current scale of the encampment is only a product of temporary policy changes adopted recently to mitigate the Covid-19

*CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION*
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

global pandemic.

As to the potential loss of shelter, plaintiffs contend the destruction of trailers and hard-sided shelter structures will expose them to the elements of heat, wind and rain; impede efforts to resist violent crime; break up a community that "watches out for each other," and pose a particular threat to women, transgender, LGBTQ+, and disabled individuals. Motion at 9:7-11:8, ¶¶ 21-29. However, such allegations draw no distinction between plaintiffs' generalized conditions of homelessness and any purported unique harm by third parties to which Caltrans Defendants are subjecting plaintiffs. There is no allegation that Caltrans is preventing plaintiffs from removing their personal property, including trailers and the components of improvised shelter. There is no allegation that Caltrans is exposing plaintiffs to extreme weather conditions. Any alleged third-party harms beyond the general circumstances of homelessness are far too speculative to support the requisite causal connection between Caltrans Defendants' actions and any foreseeable injury to plaintiffs.

In their Motion, Plaintiffs argue that the Centers for Disease Control and Prevention's guidance advises against clearing encampments. *See* Motion at 8:9-14 and Exhibit Q. However, the guidance in question is listed only as one of several "[c]onsiderations for encampments," and is not mandatory. *See* Motion, Exhibit Q at 6. The Covid-19 pandemic is no longer the unknown danger it was in March 2020. Effective Covid-19 vaccines are freely available and the vast majority of the U.S. population has some degree of immunity to Covid-19. Asfour Decl. ¶¶ 13-16, 20. Mortality rates from COVID-19 have dropped significantly in Alameda County and removal of the encampment carries a significantly reduced risk of hospitalization and mortality than when the CDC Interim Guidance was last updated. *Id.* at 20. The mere existence of Covid-19, a generalized risk Plaintiffs are already exposed to, at or away from the encampment, is insufficient to justify injunctive relief. Plaintiffs cannot plausibly plead that the planned removal by Caltrans would "expose an individual to a danger which he or she would not have otherwise faced." *Hernandez*, 897 F.3d at 1133. The encampment itself creates a risk of disease, illness, and death for the encamped individuals; Plaintiff Blain has testified to the existence of an outbreak of an unspecified disease among at least ten encamped individuals, herself included, at Wood Street since filing suit in this matter. Plaintiff Jackson Blain Decl., Dkt. 38, ¶¶ 3-8.

Plaintiffs also argue that Alameda County Health Ordinance O-2020-41 bars landlords from

*CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION*
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1   evicting residents. Motion, Exhibit R. However, this ordinance applies only to a landlord or lender

2   seeking to evict a resident from a residential unit, and has no relevance to Caltrans Defendants in this

3   action. Motion, Exhibit R at 1. Moreover, the ordinance does not apply where continued occupation

4   "poses an imminent threat to health or safety," like here. Motion, Exhibit R at 2.

5       It is undisputed that plaintiffs are subject to the generalized dangers of homelessness currently.

6   Caltrans did not cause plaintiffs to become unhoused. Removal from Caltrans property does not change

7   plaintiffs' unhoused status or the dangers faced by plaintiffs. The risks of violence and exposure to

8   Covid-19 already exist within the Wood Street encampments. Kinndra Martin, a former resident of

9   Wood Street, in fact testified in a declaration filed in another matter that "Wood Street is not a safe

10  alternative" to Ashby West. Silver Decl., Dkt. 30-4 ¶ 7, Ex. 2, ¶ 7.  Moreover, in the last months, two

11  persons from the encampment have died due to fire and being struck by an Amtrak train. Despain Decl.

12  ¶ 20. There is no right to shelter (*Lindsey v. Normet*, 405 U.S. 56 (1972); *Sanchez v. City of Fresno*,

13  914 F.Supp.2d 1079, 1101 (E.D. Cal. 2012)), nor does any case recognize a right for a trespasser upon

14  real property to services, relocation, or the provision of shelter prior to removal. Caltrans is not

15  preventing plaintiffs from removing their personal property from the encampment. The proposed

16  removal does not "plac[e] Plaintiffs in an inherently more dangerous situation than they had faced

17  previously." *Cobine,* 250 F.Supp.3d at 433. Moreover, there is no allegation that clearing the homeless

18  encampment would put Plaintiffs in any relatively greater danger *from third parties* than plaintiffs are

19  in now. Without actual harm "from a third-party, the state created danger doctrine does not apply."

20  *Caruso v. Hill*, 2020 WL 4018141, at *10 (E.D. Cal. July 15, 2020). To the contrary, Caltrans seeks to

21  remove Plaintiffs from a place of known danger, with two recent deaths in the encampment,

22  environmental hazards, and an extreme fire risk as detailed in sections II. D and E, above.

23      Plaintiffs also cannot satisfy the deliberate indifference prong, which requires showing not only

24  "an unusually serious risk of harm," but also the state defendant's "actual knowledge of (or at least,

25  willful blindness to) that elevated risk," and "failure to take obvious steps to address that known,

26  serious risk." *Harry A. v. Duncan,* 351 F.Supp.2d 1060, 1071 (D. Mont. 2005) (citations omitted).

27      Caltrans' efforts to remove the encampment is the exact opposite of deliberate indifference. A

28  fundamental motivation behind removing plaintiffs from the Wood Street encampments is the

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1   protection of plaintiffs themselves, as well as Bay Area commuters and the public, from the fires that

2   frequently ravage the encampments and their potential consequences. As detailed above, a fire at Wood

3   Street killed one individual in April, and the July 11, 2022 fire stopped traffic on the MacArthur Maze

4   for about 3-4 hours, damaged a Caltrans highway structure, and posed a potential catastrophic risk to

5   the traveling public, the environment, and West Oakland residents by virtue of its proximity to the

6   EBMUD facility. There is no contention that Caltrans Defendants deliberately timed the removal to

7   coincide with cold or otherwise inclement weather, as the defendant public entity did in *Sanchez v. City

8   of Fresno,* 914 F.Supp.2d 1079 (E.D. Cal. 2012). Caltrans' outreach efforts are noted above and in the

9   Declaration of Cheryl Chambers. Caltrans' concern for plaintiffs, the environment, and public is the

10   antithesis of the deliberate indifference required for a state-created danger.

11        As one district court noted, state departments of transportation have a compelling governmental

12   interest in removing homeless encampments on their right of way. *Veterans for Peace Greater Seattle,

13   Chapter 92 v. City of Seattle*, No. C09-1032 RSM, 2009 WL 2243796, at *5 (W.D. Wash. July 24,

14   2009). "In particular, the potential liability WSDOT [Washington Department of Transportation] faces

15   by permitting such an encampment to continue on its property is substantial. Plaintiffs themselves

16   inform the Court that these risks are very real, as highlighted by the recent death of a homeless man

17   sleeping on WSDOT property who was run over by a WSDOT brush-clearing machine." *Id*.

18        Indeed, this Court found in *Reed v. City of Emeryville*, No. 21-CV-02781-WHO, 2021 WL

19   1817103, at *6 (N.D. Cal. May 6, 2021), that ongoing housing construction created "a significant and

20   established public safety need to clear" an adjacent encampment and that dispersing residents of the

21   encampment into the surrounding community did not demonstrate deliberate indifference to a

22   significant state-created danger. Here, the public safety concerns with the Wood Street encampment,

23   given the history of fires, the fatality in April, the history of damage to Caltrans infrastructure, and the

24   proximity of the EBMUD facility's oxygen plants to the July 11, 2022 fire, are even more compelling

25   and immediate than the circumstances in *Reed*.

26        In light of all of these circumstances, Plaintiffs cannot show that Caltrans' efforts to remove

27   them from Wood Street demonstrate deliberate indifference or would put them in a more dangerous

28   situation than they are in today. As a result, Plaintiffs cannot show likelihood of success, or even raise

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

serious questions going to the merits. To raise "serious questions," the plaintiffs must still "demonstrate a *fair chance of success* on the merits or questions serious enough to require litigation." *Arc of California*, 757 F.3d at 993-94 (emphasis added). Absent likelihood of success or serious questions, this Court cannot maintain the temporary restraining order or issue a preliminary injunction.

**B.  The Balance of Hardships Tips Sharply in Caltrans' Favor and the Public Interest Favors Denying the Motion**

A plaintiff seeking a preliminary injunction must establish "that the balance of equities tips in his favor." *Winter*, 555 U.S. at 20. Under the "serious questions" sliding scale test that this Court applied, plaintiffs must satisfy an even more demanding standard: that the balance of hardships tips *sharply* in their favor. *Cottrell,* 632 F.3d at 1135. Plaintiffs cannot meet either version of this threshold element. The MTRO recognizes that "Caltrans has shown that there are weighty public safety, health, and welfare concerns that expeditious removal of all individuals on the land will serve" and that "at some point the equities will stop favoring the plaintiffs." MTRO 6:17-20.

**1.  Notice**

In the Court's MTRO, it found that "the state's imminent removal of the plaintiffs, when done without sufficient warning or plans for shelter, would expose them to unjustifiable dangers they otherwise would not face." MTRO at 5:2-4. This finding was premised on the Court's understanding that "[t]he first notice of the removals that appears in the record was on July 15, 2022, giving them just a few days' warning." *Id*. at 5:5-6. Caltrans contractors and personnel have been on site in Phase 3 every workday from May 5, 2022 to July 19, 2022, removing debris, stolen and abandoned vehicles, placing k-rail, and constructing cast-in-place concrete barrier. Baskerville Decl. ¶ 14. In the 75 days Caltrans operated in Phase 3, Caltrans removed 1200 cubic yards of debris and 140 stolen or abandoned vehicles. *Id.* Plaintiffs also doubtless were aware of the incessant fires at the location, including the fatality in April. And plaintiffs were doubtless aware of Caltrans' removal and clearing of encampments from Phase I and much of Phase II of the Wood Street encampment beginning on March 21, 2022, including the removal of over 189 tons of debris, hazardous waste, and biohazardous waste by Caltrans maintenance and 225 vehicles and 2,480 cubic yards of material by Caltrans construction contractors. Despain Decl. ¶ 21; Baskerville Decl. ¶ 13. Plaintiffs can only suggest they had no notice

18

of the imminent closure of Wood Street before July 15, 2022 by rewriting history.

Regardless, even if plaintiffs only became aware of the removal with the five-day notice[2] on July 15, plaintiffs will have had 42 days' notice by the time the hearing will be held on August 26, 2022. As the court observed in the MTRO, the notice would need "to provide a meaningful period for the plaintiffs and others in the encampment to have forewarning of their removal, time to make plans, and time for advocacy organizations and governmental actors to assist them." MTRO 7:4-6. That has been more than met at this juncture.

### 2.   Fire Risk

The burden imposed on plaintiffs to relocate from Caltrans' property cannot compare with the extreme hardships imposed on the public by the frequent and potentially catastrophic fires occurring at the encampment. The MTRO acknowledges the significant public safety concerns presented at the prior hearing and notes the "risk of recurrence rises as time goes by." MTRO 6:17-7:3. The numerous hazards to the public are detailed above in section II. D-F. This includes: the extreme history of fires; significant risk to the EBMUD MWWTP; the damage and threat of significant damage or collapse of portions of the bridge structures—which could require millions or tens of millions of dollars to repair; limited access and dangerous conditions for first responders; smoke and toxic pollutants that endanger the health of the encamped, the environment, and the public, and; disruption to commerce and the traveling public on a critical interchange that serves hundreds of thousands of vehicles per day.

In particular, the real and particularized risk to the MWWTP is acute and will be exacerbated in the immediate future. The warm and dry "Diablo Winds," which typically occur in September, October and November, are associated with high fire danger (including, historically, the 1991 Oakland Hills firestorm). These winds blow from the north-northeast and east, which would blow fires within the encampments toward the EBMUD facility. Null Decl. at ¶¶ 15-20; McMullen Decl., Ex B at p. 3.

### 3.   Environmental Concerns

The subject encampments present significant environmental concerns. First, Caltrans holds a Statewide Stormwater Permit from the San Francisco Regional Water Quality Control

---

[2] The five-day's notice provided is more notice than the 48 hours required under the *Sanchez* class-action settlement and judgment, which controls encampment removals within Oakland, including Wood Street.

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

*CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION*
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

Board ("SFRWQCB") for the discharge of stormwater and non-stormwater runoff from its rights-of-way. SFRWQCB has previously issued a Cease and Desist Order ("CDO") that requires Caltrans to cease and desist from discharging and threatening to discharge trash in violation of the Basin Plan. Caputo Decl. at ¶ 10. SFRWQCB Resolution No. R2-2015-0024 identified homeless encampments as significant water quality and public health threats due to discharges of trash and human waste, and the Central Coast Regional Water Quality Control Board has identified homeless encampments as a source of human fecal material. Caputo Decl. at ¶ 12. As detailed above in section II. A, there are no sanitation facilities at the Wood Street encampment and all waste is disposed on site or washed into Caltrans storm drains. Caputo Decl., ¶¶ 15-16 and Ex. B-C.

Additional pollutants generated by homeless encampments include petroleum hydrocarbon pollutants, and biohazards such as used syringes and pathogens, are also believed to be present in the encampment. Caputo Decl. at ¶¶ 13-14. In combination with recurring fires, the encampment is a particular risk for releasing polynuclear aromatic hydrocarbons (PAHs), which are well known carcinogens with low thresholds for exposure that persist in the environment and create increased health risks for miles downwind. *Id.* at 18. Similarly, water run-off from vehicle fires contains significant levels of contamination by lead, copper, zinc, antimony, and other heavy metals. *Id.* at 18.

## C. Plaintiffs Fail to Demonstrate Irreparable Harm

Plaintiffs also cannot show irreparable harm. A plaintiff seeking injunctive relief "must show that he is under threat of suffering 'injury in fact' that is *concrete and particularized*; the threat must be *actual and imminent, not conjectural or hypothetical*; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (emphasis added). "[I]t is the plaintiff's burden to put forth specific evidence from which the court can infer irreparable harm." *Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 760 n.8 (9th Cir. 2018). A risk of irreparable harm in the indefinite future is not enough. The harm must be shown to be imminent. *Midgett v. Tri-County Metro. Transp. Dist. of Oregon*, 254 F.3d 846, 850-851 (9th Cir. 2001).

Here, even assuming the veracity of plaintiffs' unsupported allegations, they point to no actual and imminent harm. Being relocated away from a community does not constitute irreparable harm as defined for these purposes. A fire that causes mass casualties among encamped individuals, or severely damages the highway structure, or triggers an explosion at the EBMUD wastewater treatment plant, by contrast, would cause truly irreparable harm. As the Ninth Circuit recently recognized, Plaintiffs' conclusory assertions that they have nowhere to go, even if accepted (which they need not be), are insufficient to overcome Caltrans' interest in maintaining its property and reducing the clear public safety and health risks associated with the encampment. *Where Do We Go Berkeley,* 32 F.4th 852, 862-864  (9th Cir. 2022).

The public interest likewise clearly favors removing the portion of the encampments under the structure, given the imminent fire risks to the highway structure and the encamped individuals themselves, and the potential risk of catastrophic harm if fires generated at the encampment reached the nearby liquid oxygen tanks.

## VI.    THERE IS NO BASIS FOR THIS COURT TO GRANT A PRELIMINARY INJUNCTION

### A.    A Preliminary Injunction is Barred by the Eleventh Amendment.

As noted above in section IV, Plaintiffs fail to allege direct conduct by state officials in connection with a constitutional violation and the claims are therefore barred. *Long v. Van de Kamp,* 961 F.2d 151,152 (9th Cir. 1992). Accordingly, this Court has no basis to issue a preliminary injunction.

### B.    A Preliminary Injunction Based on Plaintiffs' State-Created Danger Doctrine Claim Must be Denied on the Same Basis as Detailed Above

As noted above, the standard for granting a preliminary injunction is the same as that for granting a temporary restraining order. Thus, for the same reasons, Plaintiffs cannot satisfy the requirements for this Court to issue a preliminary injunction.

### C.    A Preliminary Injunction Based on Any of Plaintiffs' Other Claims Would Be Unlikely to Succeed on the Merits

In the MTRO, this Court found that Plaintiffs have not made a showing of likelihood of success on the merits, or raised serious questions on the merits, as to Plaintiffs' other claims. For the record,

*CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION*
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

they are addressed in brief as follows:

### 1. Plaintiffs' State-Created Danger Doctrine Under the State Constitution Fails (Claim 2)

The state-created danger doctrine is not recognized under the California Constitution. *Shen v. Albany United School Dist.*, 436 F.Supp.3d 1305, 1315 (N.D. Cal. 2020). This claim is not legally cognizable and Caltrans Defendants' contentions are more fully briefed in its Motion to Dismiss Complaint, which is incorporated by reference. Motion to Dismiss Complaint, Dkt. 56, at 10:17-11:3.

### 2. Plaintiffs' Claim for Unlawful Seizure of Property in Violation of the Fourth Amendment Fails (Claim 3)

Plaintiffs' Third Cause of Action, for unlawful seizure of property under the Fourth Amendment, necessarily fails because Caltrans Defendants are subject to a consent decree in the matter of *Sanchez v. California Department of Transportation,* Alameda County Superior Court Case No. RG16842117, and the state court retains jurisdiction over such matters. Caltrans Defendants are thus required to store personal property with apparent value for at least 60 days following an encampment removal. Silver Decl., Dkt. 30-4, ¶ 6, Ex. 1 at 76:24-27. Similar policies of pre-seizure notice and post-seizure opportunity to reclaim property have been upheld by other Courts. *Sullivan v. City of Berkeley*, No. C 17-06051 WHA, 2017 WL 4922614, at *5-6 (N.D. Cal. Oct. 31, 2017). Defendants' contentions regarding this claim are more fully briefed in its Motion to Dismiss Complaint, which is incorporated by reference. Motion to Dismiss Complaint, Dkt. 56, at 11:4-14.

### 3. Plaintiffs' ADA Claim Fails (Claim 4)

It is noted that plaintiffs do not argue in their motion for TRO that they are likely to succeed on the merits of their Title II of the Americans with Disabilities Act of 1990, even though Title II is one of their causes of action in their Complaint. Complaint at 9:26-11:9. Plaintiffs' claim is foreclosed by *Where Do We Go Berkeley,* which squarely held the ADA does not constrain Caltrans' ability to conduct clearances of encampments that pose health or safety risks and such clearances cannot be subject to lengthy injunctive delays. *Where Do We Go Berkeley*, 32 F.4th at 861-65. Defendants' contentions regarding this claim are more fully briefed in its Motion to Dismiss Complaint, which is

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

incorporated by reference. Motion to Dismiss Complaint, Dkt. 56, at 11:15-12:26.

### 4.     *Plaintiffs' Eighth Amendment Claim Fails (Claim 5)*

There is no plausible basis for plaintiffs' contention that Caltrans Defendants are violating *Martin v. City of Boise,* 920 F.3d 584 (9th Cir. 2019). Here, as the Court correctly observes in the MTRO, "Caltrans solely seeks to prohibit the plaintiffs from living on a discrete property, so the concerns in *Martin* have not been shown to be present." MTRO at 8:8-10. "[R]emaining at a particular encampment on public property is not conduct protected by *Martin*. This is not a case where 'homeless plaintiffs do not have a single place where they can lawfully be' within the City." *Shipp v. Schaaf*, 379 F. Supp. 3d 1033, 1037 (N.D. Cal. 2019). This claim is without legal basis and Caltrans Defendants' contentions are briefed more fully in its Motion to Dismiss Complaint, which is incorporated by reference. Motion to Dismiss Complaint, Dkt. 56, at 13:2-21.

### 5.     *Plaintiffs' Freedom of Assembly Claim Fails (Claim 7)*

Plaintiffs allege a violation of their "First Amendment Right to assemble by continuously threatening the communities that plaintiffs have built at Wood Street." Complaint at 12:19-20. The Interstate 880 right-of-way is a designated controlled access freeway that is not open to pedestrians nor does Caltrans property front on any local street. .  California Streets and Highways Code  § 253.1; California Vehicle. Code § 21960.  Further, Caltrans has not made its highways available for public discourse, and thus they are not designated public fora. *Brown v. California Dep't of Transp.,* 321 F.3d 1217, 1222 (9th Cir. 2003). This claim is not legally cognizable and Caltrans Defendants' contentions are more fully briefed in its Motion to Dismiss Complaint, which is incorporated by reference. Motion to Dismiss Complaint, Dkt. 56, at 13:22-14:9.

### 6.     *Plaintiffs' Conspiracy and Monell Claims Fail (Claims 8 and 9)*

Plaintiffs' conspiracy and *Monell* causes of action are derivative of the preceding claims and are without legal basis. Caltrans Defendants' contentions are briefed more fully in its Motion to Dismiss Complaint, which is incorporated by reference. Motion to Dismiss Complaint, Dkt. 56, at 14:18-28.

### D.  A Balance of Hardships Tips Sharply in Caltrans Defendants' Favor and the Public Interest Favors Denying the Motion

For the same reasons as those with respect to Caltrans Defendants' motion to dissolve the

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1  temporary restraining order, a balance of hardships and the public interest tip sharply in Caltrans

2  Defendants' favor and against this Court granting a preliminary injunction. The extraordinary number

3  of fires at the encampments; the fatal fire on April 5, 2022; the damage caused to the Caltrans highway

4  support structure by past fires including the July 11, 2022 fire; and the presence of the EBMUD oxygen

5  tanks in close proximity to the location of the July 11, 2022 fire all underscore the urgency of clearing

6  the encampment before a catastrophic event occurs that could become a mass casualty event for people

7  experiencing homelessness at the encampments, or for the traveling public, or for the greater West

8  Oakland community. Any grant of a preliminary injunction would also have to be reconciled with the

9  Ninth Circuit's holdings in *Where Do We Go Berkeley* that Plaintiffs' conclusory assertions that they

10  have "nowhere to go" are insufficient to overcome Caltrans' interest in maintaining its property and

11  reducing the clear public safety and health risks associated with the encampment, and that allowing the

12  encampments to remain in place for six months was not a reasonable accommodation. *Where Do We*

13  *Go Berkeley,* 32 F.4th at 862, 864.

14       The public interest likewise clearly favors removing the portion of the encampments under the

15  structure, given the imminent fire risks to the highway structure and the encamped individuals

16  themselves, and the potential risk of catastrophic harm if fires generated at the encampment reached the

17  nearby MWWTP.

18       **E.  Plaintiffs Fail to Demonstrate Immediate Threatened Harm**

19       Plaintiffs also cannot show irreparable harm that is concrete and particularized, and actual and

20  imminent, not conjectural or hypothetical.

21  **VII.   CALTRANS IS CONSTITUTIONALY AND STATUTORILY BARRED FROM
         FUNDING HOUSING, RELOCATION, OR SOCIAL SERVICES**

22

23       The MTRO outlines a possible solution that the Court indicates would be basis for

24  dissolution of the TRO—provision of a "concrete, detailed, and realistic plan" for "providing

25  individuals within the encampment with shelter and services after the closure." MTRO 9:11-13.

26  Caltrans is legally barred from funding such a plan and therefore cannot on its own provide such

27  a solution. Caltrans is restricted by Article XIX of the California Constitution to use its funds for

28  the transportation purposes as dictated by statute and the constitution. Duncan Decl. ¶¶ 6-13. And

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1   it does not have police powers or a general fund like local public entities which are charged with

2   addressing and funding homelessness relief efforts. *See* Health and Safety Code § 50216 *et seq.*,

3   & § 50250 *et seq.* (cities, counties, tribes are the "applicants" able to apply for CAL ICH

4   funding); Welfare and Institutions Code §17000 (cities and counties to provide medical care).

5   Streets and Highways Code § 820 further requires Caltrans to comply with federal law and

6   regulations, including 23 C.F.R. § 710.403, which requires that federally funded facilities be

7   devoted exclusively to the purposes of that facility and preserved free of all other public or

8   private alternative uses unless otherwise permitted by law. While Caltrans can collaborate with

9   local public entities to address homelessness, it is ultimately reliant on local public entities

10  provide funding and housing for the homeless.

11          In light of the above, maintaining the injunction under a state created danger theory would

12  rest on an unprecedented premise: Caltrans is deemed "deliberately indifferent" unless Caltrans

13  allows plaintiffs to remain on Caltrans property—under conditions that this Court has recognized

14  present acute safety and health risks to plaintiffs, motorists, and the residents of Oakland—for so

15  long as it takes for them to obtain alternative shelter, even though Caltrans has no authority or ability

16  to provide housing or shelter. The Ninth Circuit forcefully rejected such a theory under the ADA,

17  *Where Do We Go Berkeley,* 32 F.4th at 862, 864, and the Court's reasoning in that decision applies

18  with equal force here. Plaintiffs have now had ample notice of the planned clearance and an

19  opportunity to relocate and move their property. Caltrans should be allowed to proceed without

20  further delay to address the pressing safety risk that the encampment poses.

21  **VIII.   CONCLUSION**

22          Based upon the foregoing, Caltrans Defendants have legitimate and compelling public safety

23  interests in removing the encampment and plaintiffs' claims are insufficient to support injunctive relief.

24  Caltrans Defendants therefore request the Court to dissolve the temporary restraining order and deny

25  any request for a preliminary injunction.

26  / / /

27  / / /

28  / / /

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100
Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1  Respectfully submitted,

2

3  DATED:  August 12, 2022                    ERIN HOLBROOK

4                                             G. MICHAEL HARRINGTON
                                              SAMUEL C. LAW
5                                             STEPHEN A. SILVER
                                              MARK D. GUENZI
6
                                              By  /s/ Stephen A. Silver
7                                             Attorneys for Defendants STATE OF
                                              CALIFORNIA, acting by and through the
8                                             Department of Transportation, DINA EL-
                                              TAWANSY, and TOKS OMISHAKIN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND RESPONSE TO ORDER TO SHOW CAUSE
RE: PRELIMINARY INJUNCTION**