UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKSON BLAIN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF TRANSPORTATION, et al., <br><br> Defendants. | Case No. 3:22-cv-04178-WHO <br><br> **ORDER DENYING MOTION FOR TEMPORARY RESTRAINING** <br><br> Re: Dkt. No. 126 |

As described in detail in prior orders (Dkt. Nos. 40 and 94, which are incorporated here by reference), plaintiffs are a group of individuals experiencing homelessness who are or were previously living on land owned by the California Department of Transportation ("CalTrans") in an encampment known as the "Wood Street Encampment." According to the allegations in the pending motion, some plaintiffs subsequently moved to a lot abutting the Wood Street Encampment that is privately owned and leased to the City of Oakland (known as the "Game Changer Encampment"). Plaintiffs now seek a temporary restraining order ("TRO") to enjoin defendants from forcing plaintiffs to leave the Game Changer Encampment and from destroying plaintiffs' property in violation of this court's prior orders.[1]

In its opposition to this motion and again at the hearing, the City of Oakland recognized the confusion caused by its notices to vacate and represented that it will postpone the proposed closure of the Game Changer encampment for seven days, to October 7, 2022. *See* Opposition to

---

[1] It is not clear that any alleged injuries stemming from the Game Changer Encampment, which is on City property, can be asserted given the complaint fil[ed] in this case, which described alleged injuries related to the Wood Street Encampment on CalTrans property. To resolve this TRO, I will assume that the allegations are covered by the complaint; that said, as described in this Order there is no basis to issue a TRO.

Motion for Temporary Restraining Order [Dkt. No. 130] ("Oppo") 4:13-25. The additional week should provide sufficient time for individuals living at the Game Changer Encampment to be apprised of and understand the timeline, for outreach coordinators to meet and work with the individuals, and for the City of Oakland and County of Alameda to—hopefully—offer suitable shelter options for each displaced individual.

The underlying theory on which I relied to grant a TRO in this case in July was that there was a state-created danger stemming from the specific combination of lack of notice and the length of time residents lived at the Wood Street Encampment. *See* Modified Temporary Restraining Order [Dkt. No. 40]. Those factors are no longer present; plaintiffs have had notice for more than two months that they had to vacate the Wood Street Encampment. Because of that, and for the reasons stated in my prior orders, the plaintiffs are unable to establish that they are likely to succeed on the merits or that the balance of equities tip in their favor. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (outlining requirements to grant a TRO); *see also* Fed. R. Civ. Pro. 65. *Cf. Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 433 (N.D. Cal. 2017) (dismissing state-created danger claim by homeless plaintiffs because mere removal without a showing of a particular danger was insufficient); *Young v. City of Los Angeles*, No. CV-2000709-JFW-RAO, 2020 WL 616363, at *7 (C.D. Cal. Feb. 10, 2020) (essentially same).

I recognize the immense difficulty of this situation, especially the hardships posed to the community that has formed at Wood Street and is directly impacted in so many ways by the closures. By any measure, the hardships are significant. But they do not tip the scale regarding irreparable injury in the absence of preliminary relief sufficiently to enter a TRO. *See Winter*, 555 U.S. at 20. Policy choices aside, there is no legal basis to require the City of Oakland to do more than it has represented it is doing here. The City has the legal right to move individuals and their belongings from City property and has represented that it will comply with City policies concerning storage of belongings and safekeeping of vehicles. *See* Oppo. 4:13-20, 4:28-5:7. In doing so, the City seems to be taking steps to ameliorate some of the consequences of what the law allows, including offering shelter (albeit in a congregate setting that is not desired by many plaintiffs), providing outreach, and safeguarding the personal property of plaintiffs to the extent

practicable. And importantly, the purpose of the Game Changer Encampment closure and cleanout is to benefit this very community in the long term, by preparing the land to serve as the space for the future 100 cabin community slated to be completed by the end of the year. *See id.* 1:4-11. As discussed in prior orders and hearings, at least half of the beds in this new community will be dedicated to residents of the former CalTrans Wood Street Encampment. *See* Simmons Decl. ¶¶ 19-22. Delaying the closure of the Game Changer Encampment would impair the long-term benefits that this new construction will bring to many in the Wood Street community and to Oakland's homeless population in general.

I remain concerned about the plaintiffs' allegations of property destruction at the Wood Street Encampment. To the extent that these allegations serve as a basis for plaintiffs' present motion, however, I find that they do not meet the legal standard to grant a TRO. At the hearing, CalTrans presented the testimony of its on-site project manager for the clearing of the Wood Street Encampment and made representations through counsel describing the apparently reasonable steps it has taken to ensure that property is not being improperly destroyed. I will further evaluate the validity of the plaintiffs' allegations, along with any other evidence and arguments about alleged property destruction in violation of my previous order, at the upcoming hearing on the motion for contempt.

Accordingly, the motion for the TRO is DENIED.

**IT IS SO ORDERED.**

Dated: October 3, 2022



William H. Orrick
United States District Judge